Argued and submitted May 9, peremptory writs to issue November 28, 1997

## STATE OF OREGON ex rel
### Edwin I. CALEB,
### District Attorney for Klamath County,
*Plaintiff-Relator,*

*v.*

### Honorable Richard C. BEESLEY,
### Judge of the Circuit Court of the
### State of Oregon for Klamath County,
*Defendant.*
### (SC S43541 (Control), S43542)*
### (Cases Consolidated)
949 P2d 724

---

\* Relating to Klamath County Circuit Court cases 95-1765CR and 95-2337CR.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for relator. The briefs were filed by Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General.

Phil Studenberg, Klamath Falls, argued the cause for defendant. With him on the briefs was Myron Gitnes.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

VAN HOOMISSEN, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

## VAN HOOMISSEN, J.

This is an original mandamus proceeding arising out of sentences imposed in the criminal cases of *State v. Soloman* (CC 95-2337CR) and *State v. Pate* (CC 95-1765CR). In each case, defendant, a circuit court judge, refused to impose the mandatory minimum sentences mandated by Ballot Measure 11 (1994) (Measure 11) and by ORS 137.700(2)(c) (1995).[1] Defendant ruled that Measure 11 is facially unconstitutional under several provisions of the Oregon Constitution. For the reasons that follow, we disagree. Accordingly, we direct the issuance of peremptory writs of mandamus requiring defendant to enter corrected judgments in *Soloman* and *Pate* that impose the minimum sentences mandated by law.

The historical facts pertinent to these proceedings are not in dispute. Relator, the District Attorney for Klamath County, represents the State of Oregon in *Soloman* and *Pate*. Soloman was convicted of attempted murder, ORS 163.115, assault in the first degree, ORS 163.185, and assault in the second degree, ORS 163.175(1)(b), based on acts that occurred in September 1995. Pate was convicted of manslaughter in the second degree, ORS 163.125, based on an act that occurred in July 1995. Because of the nature and date of her crimes, Soloman was susceptible to the mandatory minimum sentencing prescribed by Measure 11, as amended by Oregon Laws 1995, ch 421 (effective June 30, 1995), and by ORS 137.700(2)(c) (1995). Because of the nature and the dates of his crime, Pate was susceptible to the mandatory minimum sentencing prescribed by Measure 11, as amended by Oregon Laws 1995, ch 421.

In both cases, however, defendant ruled:

"I find that Ballot Measure 11 violates the Oregon Constitution in the following particulars:

---

[1] Measure 11 was an initiative measure approved by the voters at the November 1994 General Election; it became effective on April 1, 1995. Or Laws 1995, ch 2. That measure was codified as ORS 137.700. In this opinion, we use the terms Measure 11 and ORS 137.700 interchangeably.

ORS 137.700(2)(c) (1995) *added* attempted or conspiracy to commit murder, as defined in ORS 163.116, to the crimes listed in Measure 11 that are subject to mandatory minimum sentencing. Or Laws 1995, ch 421. That amendment became effective June 30, 1995.

"1.   [Article IV,] Section 1(2)(d) states:

" 'An initiative petition shall include the full text of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith.'

"Ballot Measure 11 violates this provision in that it contains two subjects: (1) A major overhaul of Oregon's Juvenile Code; and (2) mandatory minimum sentencing for adult offenders.

"2.   Article [III], Section 1 states:

" 'The powers of the Government shall be divided into three seperate [*sic*] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.'

"Ballot Measure 11 violates this provision by depriving the Courts of their judicial sentencing power in a broad class of cases.

"3.   Article [I], Section 15 states:

" 'Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice.'

"Article [I], Section 16, provides in part:

" '* * * Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense. * * *'

"Ballot Measure 11 also violates these provisions.

"4.   Sentencing power in the State of Oregon rests with the Courts. Ballot Measure 11 in reality transfers sentencing power to the District Attorney. If the defendant is convicted, the criminal charge chosen determines the sentence."

In light of those rulings, defendant refused to impose the mandatory minimum sentences prescribed by ORS 137.700. Instead, defendant imposed only the presumptive sentences

prescribed for each crime by the state sentencing guidelines. In each case, relator filed a petition for an alternative writ of mandamus. Relator contends that defendant erred in refusing to impose any of the minimum sentences mandated by ORS 137.700. This court issued alternative writs, and the present proceedings ensued.

Defendant first argues that mandamus relief is not appropriate in these cases because relator has an adequate remedy by direct appeal with respect to his claims of error. This court recently answered that argument adversely to defendant's position. *State ex rel Huddleston v. Sawyer*, 324 Or 597, 600-08, 932 P2d 1145 (1997). We exercise our discretion to proceed in mandamus.

## "ONE-SUBJECT" LIMITATION

■    In analyzing a provision of the Oregon Constitution, we consider "[i]ts specific wording, the case law surrounding it, and the historical circumstances that led to its creation." *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). We first consider the contention that Measure 11 violates the one-subject provision of Article IV, section 1(2)(d), of the Oregon Constitution.

Precise analysis of that claim requires this court to examine the statutory wording under which Soloman and Pate would have been sentenced. The first issue is whether this court reviews the constitutionality of Measure 11 under Article IV, section 1(2)(d), requiring initiative measures to "embrace one subject only," or under Article IV, section 20, requiring legislative acts to "embrace but one subject."

Soloman and Pate essentially argued that the one-subject provision was violated, first by Measure 11's enactment in 1994, and second by the legislature's 1995 amendments to ORS 137.700. *See* Or Const, Art IV, § 22 ("No act shall ever be revised, or amended by mere reference to its title, but the act revised, or section amended shall be set forth, and published at full length."). Thus, it could be argued that the pertinent enactment is the most recent, because that enactment contains all the wording about which Soloman

and Pate complain. However, that argument misstates Oregon law.

■ In Oregon, the rule of statutory construction of amended law has been settled for more than a century. In the absence of a clear indication to the contrary, a statute that is incorporated within an amendatory act, without any substantial or material changes in its terms, is neither deemed repealed nor deemed reenacted merely by being incorporated in the amendatory act. *Noonan v. City of Portland*, 161 Or 213, 250-51, 88 P2d 808 (1939) (citing *State v. McGinnis*, 56 Or 163, 165, 108 P2d 132 (1910)); *Stingle v. Nevel*, 9 Or 62, 63-65 (1880); *see also Jones v. General Motors Corp.*, 325 Or 404, 417-18, 939 P2d 608 (1997) (same).

■ It follows that if Soloman's and Pate's felonies were listed in Measure 11, this court reviews defendant's ruling under section 1(2)(d). However, if Soloman and Pate were to be sentenced for felonies that that 1995 legislature had *added* to Measure 11's crimes, this court reviews under section 20. We conclude that, as to Soloman's sentencing for assaults and Pate's sentencing for manslaughter, defendant's ruling should be examined under section 1(2)(d), because those were listed felonies under Measure 11. Soloman's sentencing for attempted murder, however, should be examined under section 20, because the 1995 legislature added that crime to the list of felonies requiring mandatory minimum sentencing. Or Laws 1995, ch 421, § 1(2) (codified as ORS 137.700(2)(c) (1995)).

Article IV, section 1(2)(d), of the Oregon Constitution, provides, in part:

"A proposed law * * * shall embrace one subject only and matters properly connected therewith."

Article IV, section 20, provides, in part:

"Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title."

■    In *OEA v. Phillips*, 302 Or 87, 99-100, 727 P2d 602 (1985), this court recognized that, before the adoption of section 1(2)(d) in 1968, section 20 had been interpreted as applying to initiative measures as well as to legislative acts. *See Turnidge v. Thompson*, 89 Or 637, 651, 175 P 281 (1918) (announcing principle). The *Phillips* court concluded that there is "nothing in the extremely minor difference in wording of subsection (2)(d) and section 20 to indicate that the two texts should be construed or interpreted to have different meanings" and "the two provisions should be given the same meaning." *Id.* at 100. Therefore, case law interpreting both section 1(2)(d) and section 20 is relevant in determining whether Measure 11 (1994) embraces more than one subject.

In *Phillips*, this court set forth a method of analyzing claims that an initiative measure violates section 1(2)(d):

"A measure must first be scrutinized to determine whether it embraces more than one subject. If it does, it offends the constitutional limitation even if the subjects are 'properly connected,' and that is the end of the inquiry. If it does not, the single subject must be identified. When that is done, and if the proposal embraces no other matters, there is no need to inquire into proper connection. * * *

"If the proposal embraces one subject only and also other 'matters,' then, and only then, it must be determined whether those other matters are properly connected with the subject." *Id.* at 100.

*McIntire v. Forbes*, 322 Or 426, 443-44, 909 P2d 846 (1996), provided the analytic framework for Article IV, section 20 one-subject challenges to the body of an act. To determine if the act "embrace[s] but one subject," the court attempts to identify a unifying principle logically connecting all provisions in the act. First the court examines the body of the act. Second, if the court is unable to ascertain such a principle in the body of the act, then the court considers whether the act's title provides a unifying principle identified by the legislature. *Ibid.* In *McIntire*, 322 Or at 443, this court explained:

"One can extract from this court's cases interpreting Article IV, section 20, over the last century certain shared

ingredients in the definition of what constitutes 'one subject.' The legislature may choose a *comprehensive* subject for legislation. But, for the contents of a bill to embrace one subject, there must be a unifying principle, referred to variously as 'one general subject,' 'one general object,' 'one general idea,' or 'the object in view.' Relatedly, for a bill to embrace one subject, there must exist among its parts some logical connection relating each to the others." *Id.* at 443 (emphasis in original; footnote omitted).

*McIntire* further stated that this court's section 20 decisions have reiterated

"that 'one of the principle objects was to "prevent the combining of incongruous matters and objects totally distinct and having no connection nor relation with each other in one and the same bill," ' [(citing *Nielson v. Bryson*, 257 Or 179, 186, 477 P2d 714 (1970))]."[2] *Id.* at 439.

Because this court has held that the one-subject provisions of section 1(2)(d) and section 20 should be given the same meaning, *Phillips*, 302 Or at 110, the result here is the same whether this court uses the methodology from *Phillips* or from *McIntire*.

The act discussed in *State v. Shaw*, 22 Or 287, 289-90, 29 P 1928 (1892), enacted several provisions "to protect salmon and other food fishes" in Oregon, including a prohibition against discharging lumber waste into rivers. This court concluded that the enactment survived a section 20 challenge and noted:

"The general object and purpose of the act in question here is to protect salmon and other food fishes; and *whatever means may tend directly or indirectly to accomplish this object, may be properly included in the act.*" *Id.* at 289 (emphasis added).

The enactment challenged in *Lovejoy v. Portland*, 95 Or 459, 465, 188 P 207 (1920), set forth conditions under which local and foreign businesses could be started and conducted, regulated the insurance department, prescribed jurisdiction and powers of the insurance commissioner, made

---

[2] Section 20 also serves another function, which is related to that provision's two principal purposes: enabling the Governor to exercise the veto power as to distinct subjects. *McIntire*, 322 Or at 439 n 10.

provisions for ensuring the solvency of insurance companies, addressed qualification and licensure of agents, specified types and forms of insurance various companies could offer, made provisions to prevent rate discrimination, and prescribed various other matters relating to the insurance business, including the preemption of local ordinances. 95 Or at 461-62. This court held that the law survived a section 20 one-subject challenge because the law had but one general object and purpose, to regulate and supervise insurance, other than State Industrial Accident Insurance. *Id.* at 467-68.

The enactment challenged in *McIntire* would have

" '(1) provide[d] state funding [and land use procedures] for light rail, (2) expand[ed] the availability of card-lock service stations, (3) promote[d] "regional problem solving" in land use matters, (4) regulate[d] confined animal feeding, (5) preempt[ed] local pesticide regulation, (6) adopt[ed] new timber harvesting rules, (7) grant[ed] immunity to shooting ranges for "noise pollution," and (8) protect[ed] salmon from cormorants.' " 322 Or at 444.

Because this court was "unable to discern a principle unifying those eight topics," the court held that the enactment embraced more than one subject in violation of section 20. *Id.* at 445.

This court's one-subject decisions demonstrate that an enactment that embraces only one subject does not violate the one-subject provisions of Article IV merely by including a wide range of connected matters intended to accomplish the goal of that single subject.

With the foregoing principles and cases in mind, we examine Measure 11 to determine whether we can identify a unifying principle logically connecting all provisions in the act, such that it can be said that the measure "embrace[s] one subject only." Or Const, Art IV, section 1(2)(d); *McIntire*, 322 Or at 443-44.

Defendant argues that "Measure 11 violates section 1(2)(d) in that it contains two subjects: (1) a major overhaul of

Oregon's Juvenile Code; and (2) mandatory minimum sentencing for adult offenders." Because we conclude that Measure 11 embraces only one subject, we disagree. The single subject of Measure 11 is the mandatory imprisonment of any person, 15 years of age or older, who is convicted of a listed felony on or after April 1, 1995. Every provision of Measure 11 is concerned with the imposition of mandatory minimum sentences in those circumstances. No provision of Measure 11 addresses a subject separate from that single subject.[3]

Measure 11 removed certain persons from the exclusive, original jurisdiction of the juvenile court. Defendant argues that that fact alone justifies a conclusion that Measure 11 contains more than one subject. We recognize that Measure 11 changes how some juveniles will be tried and, if convicted, how they will be sentenced. However, that change clearly facilitates the statute's single goal. It relates directly to and is properly connected with Measure 11's single subject.

Defendant further argues that Measure 11 effected a "major overhaul" of the juvenile code and, therefore, that it contains more than one subject. Assuming *arguendo* that Measure 11 effected a "major overhaul" of the juvenile code, neither the magnitude of the changes to the juvenile code, nor the fact that Measure 11 has an impact on several existing statutes, necessarily controls the outcome of a one-subject inquiry. The dispositive question is whether the changes are still part of Measure 11's single subject. We conclude that they are.

The measure's direct effect on the juvenile code is minimal. It made no changes in the basic structure of the juvenile code, and it does nothing to change the way any juvenile other than one who is charged with a Measure 11 offense

---

[3] After the voters approved Measure 11, and in order to implement the requirements of that provision, the 1995 legislature amended the provision in some minor respects and enacted other legislation, which resulted in the statutes codified as ORS 137.700 to 137.707. Or Laws 1995, ch 421, § 1, and ch 422, §§ 48, 49. Chapter 421, section 4, amended chapter 422, section 49, by adding attempt or conspiracy to commit murder or aggravated murder. ORS 137.700 is the general statute that embodies the provisions in Measure 11; ORS 137.705 and 137.707 are the statutes that specifically govern the procedure for imposing a Measure 11 minimum sentence on any defendant who was 15, 16, or 17 years old when he or she committed the listed felony.

is treated. The provisions of Measure 11 concerning the prosecution of persons 15 to 17 years old charged with and convicted of a listed felony are not concerned with a different subject. Rather, they are concerned with the means of implementing Measure 11's single goal. Those provisions are "properly pertinent and germane" to Measure 11's one subject. *Shaw*, 22 Or at 289. By describing a procedural mechanism for achieving its goal, Measure 11 includes only "matters properly connected" to the initiative's one subject. Or Const, Art IV, §§ 1(2)(d) and 20. Because we conclude that Measure 11 embraces only one subject and other matters properly connected therewith, we hold that Measure 11 does not violate the one-subject provision of Article IV, section 1(2)(d). Defendant erred as a matter of law in ruling otherwise.

■    Because Soloman also was subject to minimum sentencing for attempted murder under ORS 137.700(2)(c) (1995), which was the 1995 legislature's amendment to Measure 11 (1994), we next examine that amendment to Measure 11 to determine whether it violates the one-subject provision of section 20.

Oregon Laws 1995, ch 421, section 1(2) (codified as ORS 137.700(2)(c)), provides, in part:

"The offenses to which subsection (1) of this section applies and the applicable mandatory minimum sentences are:

"* * * * *

"(c)   Attempted or conspiracy to commit murder, as defined in ORS 163.115......................................90 months."

The subject of that amendment is the addition of attempt or conspiracy to commit murder, and certain other crimes, to the preexisting list of offenses that must receive a mandatory minimum sentence pursuant to ORS 137.700(1). That subject embraces every part of the 1995 amendment. As a result, ORS 137.700(2)(c) does not violate the one-subject provision of Article IV, section 20.

## CRUEL AND UNUSUAL PUNISHMENTS

We next address defendant's contention that Measure 11 (1994) violates Article I, section 16, of the Oregon Constitution. That provision provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

Defendant relies on United States Supreme Court cases which hold that death-penalty sentencing schemes that do not afford a meaningful opportunity for consideration of mitigating evidence violate the Eighth Amendment. *See, e.g., Penry v. Lynaugh*, 492 US 302, 109 S Ct 2934, 106 L Ed 2d 256 (1989) (remanding for resentencing with jury instructions, if requested, that give jury opportunity to consider mitigating evidence of a defendant's background and character or the circumstances of the crime); *see also State v. Guzek*, 322 Or 245, 257, 906 P2d 272 (1995) (same, quoting *Penry*, 492 US at 328).

The United States Supreme Court specifically has limited its holdings concerning the importance of mitigating evidence to capital cases. *See, e.g., Harmelin v. Michigan*, 501 US 957, 995, 111 S Ct 2680, 115 L Ed 2d 836 (1991) ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." (citations omitted)); *see also Woodson v. North Carolina*, 428 US 280, 304, 96 S Ct 2978, 49 L Ed 2d 944 (1976) (the prevailing practice of individualized sentencing determinations reflect enlightened policy rather than a constitutional imperative, but when inflicting the penalty of death, consideration of the character and record of the offender and circumstances of the offense are constitutionally indispensable). Defendant's reliance on death penalty cases is not persuasive.

In *State v. Rogers*, 313 Or 356, 380, 836 P2d 1308 (1992), *cert den* 507 US 974 (1993), this court held that "[t]he standard for determining whether punishment is cruel and unusual [under Article I, section 16] is whether 'the punishment [is] so proportioned to the offense committed as to shock

the moral sense of all reasonable men as to what is right and proper under the circumstances,' " *quoting Sustar v. County Court for Marion Co.*, 101 Or 657, 665, 201 P 445 (1921). *See State v. Isom*, 313 Or 391, 401, 837 P2d 491 (1992) (so holding).

■ Defendant does not offer any other analysis of Article I, section 16, to support his argument that a noncapital sentencing scheme must provide for individualized determinations of an offender's criminal history and mitigating factors, and we know of no basis for so holding. *Cf. State v. Turner*, 296 Or 451, 676 P2d 873 (1984) (upholding mandatory minimum sentence for dangerous offender against challenge that sentence was disproportionate to sentence of unrelated crime); *see also Harmelin*, 501 US at 996 ("We have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further.").

■ Defendant does not argue that the mandatory terms of imprisonment required by ORS 137.700 and ORS 137.700(2)(c) (1995) are "cruel and unusual" solely because of their length. Nor does he argue that the terms of imprisonment are impermissibly disproportionate to prison terms imposed for lesser-included crimes. *See State v. Shumway*, 291 Or 153, 165, 630 P2d 796 (1981) (minimum sentence of 25 years for murder violated Article I, section 16, where minimum sentence for aggravated murder was 15 to 20 years).

We hold that neither Measure 11 nor ORS 137.700 *et seq.* violates Article I, section 16, in the way that defendant argues. Defendant erred as a matter of law in ruling otherwise.

## SEPARATION OF POWERS AND REFORMATION

Finally, we address defendant's contention that Measure 11 violates Article III, section 1 (separation of powers), and *former* Article I, section 15 (principles of reformation), of the Oregon Constitution.

Article III, section 1, provides:

"The powers of the Government shall be divided into three seperate (*sic*) departments, the Legislative, the Executive, including the administrative, and the Judicial; and

no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

*Former* Article I, section 15, provided:

"Laws for the punishment of crime shall be founded on principles of reformation, and not of vindictive justice."[4]

■ ■ We understand defendant's arguments concerning the separation of powers and the reformation clauses to be substantially the same as the arguments of the defendant in *Huddleston*. In *Huddleston*, this court answered both of those arguments adversely to defendant's position. We hold that neither Measure 11 nor ORS 137.700 *et seq.* violates Article III, section 1, or *former* Article I, section 15. Defendant erred as a matter of law in ruling otherwise.

In summary, we hold that defendant erred as a matter of law in ruling that Measure 11 or ORS 137.700 (1995) violate the Oregon Constitution on any of the grounds argued here.

We direct the issuance of peremptory writs of mandamus requiring defendant to enter corrected judgments in *Soloman* that impose the minimum sentences mandated by ORS 137.700(2)(c), (f) and (g) and in *Pate* that impose the minimum sentence mandated by ORS 137.700(2)(e).

Peremptory writs to issue.

---

[4] *Former* Article I, section 15, was amended by the voters in 1996. That section now reads:

"Laws for the punishment of crime shall be founded on these principles: protection of society, personal responsibility, accountability for one's actions and reformation."