Argued and submitted May 29; resubmitted En Banc November 19, 1998, remanded for resentencing; otherwise affirmed February 17, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL STEVEN MCLAIN,
*Appellant.*

## (96CR0572F; CA A97042)

974 P2d 727

Jesse Wm. Barton, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Deits, Chief Judge, and Warren, Edmonds, De Muniz, Landau, Haselton, Armstrong, and Wollheim, Judges.

DE MUNIZ, J.

Warren, J., dissenting.

**DE MUNIZ, J.**

Defendant was convicted of murder, ORS 163.115, and appeals his sentence of life imprisonment with a mandatory minimum sentence of 25 years. He argues that the mandatory minimum sentence is unconstitutional for a variety of reasons that have been rejected in *State ex rel Caleb v. Beesley*, 326 Or 83, 949 P2d 724 (1997), and *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den* ___ US ___, 118 S Ct 557, 139 L Ed 2d 399 (1997). He also argues that the sentence of life imprisonment is unconstitutionally disproportional under Article I, section 16, of the Oregon Constitution. Given the *Caleb* and *Huddleston* decisions, we reject defendant's first argument without discussion. On defendant's second argument, we agree that the life imprisonment provision of ORS 163.115(5)(a) is facially unconstitutional and thus remand for resentencing.

■ ORS 163.115(5)(a) provides: "A person convicted of murder, who was at least 15 years of age at the time of committing the murder, shall be punished by imprisonment for life." Article I, section 16, of the Oregon Constitution, provides that "all penalties shall be proportioned to the offense." Defendant argues that, because there are no statutory provisions for paroling a person sentenced to life imprisonment under ORS 163.115(5)(a), such a sentence is effectively a sentence of life imprisonment without the possibility of parole and that that sentence is unconstitutionally disproportional to an aggravated murder sentence of life imprisonment with the possibility of parole. For the following reasons, we agree with defendant.

The Oregon Supreme Court has interpreted Article I, section 16, of the Oregon Constitution, to mean that a statutory scheme that provides a greater penalty for a lesser-included offense violates the constitutional provision. *State v. Shumway*, 291 Or 153, 630 P2d 796 (1981); *Cannon v. Gladden*, 203 Or 629, 231 P2d 233 (1955). Defendant argues that, under the rule of law from *Shumway* and *Cannon*, the murder sentencing scheme under which defendant was sentenced violates Article I, section 16, because it provides a greater penalty for the lesser-included crime of murder than it does for the greater crime of aggravated murder.

Some background of the cases interpreting Article I, section 16, as well as a history of the murder sentencing statutes, is necessary in order to describe the constitutional problem. In *Cannon*, the habeas corpus petitioner had been charged with rape and convicted of the lesser-included offense of assault with intent to commit rape. 203 Or at 630. Had he been convicted of rape, he would have received a sentence not to exceed 20 years. *Id.* However, the petitioner received a life sentence for the crime of assault with intent to commit rape. *Id.* at 631. The court declared it "unthinkable" that a person convicted of the lesser offense could be subject to the greater sentence. *Id.* at 632-33. The court went on to note that, when the legislature enacted the penalty of life imprisonment for assault to commit rape, it "undoubtedly did not have in mind" that rape carried a lesser sentence. "Otherwise, it would not have created such an absurdity." *Id.* at 633. The court declared the life imprisonment portion of the statute "null and void" but upheld an alternative sentencing provision that allowed for a sentence of up to 20 years for the crime of assault with intent to commit rape. *Id.*

The court faced a similar problem in *Shumway*. At the time *Shumway* was decided, the crime of aggravated murder carried possible sentences of life imprisonment with a possibility of parole after 15 to 20 years, depending on the circumstances of the crime. However, the lesser-included offense of murder carried a sentence of life imprisonment with a possibility of parole after 25 years. 291 Or at 158-59. Following *Cannon*, the court concluded that

> "Under this statutory scheme, a defendant receives a lesser minimum sentence to be served before being eligible for parole for aggravated intentional homicide than he does for an unaggravated intentional homicide. This is in violation of Art I, § 16 of the Oregon Constitution and that provision in ORS 163.115(5) requiring the defendant to serve not less than 25 years before becoming eligible for parole is invalid and cannot be applied to the defendant; the statutory provision requiring a life sentence is valid." *Shumway*, 291 Or at 164.

*See also Merrill v. Gladden*, 216 Or 460, 337 P2d 774 (1959) (penalty assessable for the lesser-included crime of assault

with intent to rob cannot be greater than that provided for an accomplished robbery).

■■ Two principles from these cases are undisputable and, indeed, are undisputed by the parties in this case. First, a statutory scheme that provides a greater penalty for a lesser-included offense than for the greater offense violates Article I, section 16, of the Oregon Constitution. Second, murder is a lesser-included offense of aggravated murder. Proper application of those two principles to the present case, and the present statutory sentencing scheme for murder and aggravated murder, lead to the conclusion that a defendant convicted of the crime of murder may be subject to a harsher penalty than one convicted of the greater crime of aggravated murder. That is so because the aggravated murderer may be paroled after serving a mandatory minimum sentence. *See* ORS 163.105(1)(c) and (2) (certain people sentenced to life imprisonment for the crime of aggravated murder may be considered for parole after serving 25 years). However, under the present statutory scheme, there are no provisions for *ever* paroling a person convicted for a murder committed after November 1, 1989, who is sentenced to life imprisonment under ORS 163.115(5)(a).

To understand how this came about, one must consider the history of murder sentencing under Oregon law and its relationship to the authority of the Board of Parole and Post Prison Supervision. Under the 1971 criminal code, murder carried an indeterminate life sentence, but parole was available after a certain point, at the discretion of the Board of Parole. As noted above, the court in *Shumway* held that an initiated amendment that restricted the availability of parole until the offender had served 25 years was unconstitutional; thus, although the life sentence itself was constitutional, the restriction on when the offender could be considered for parole was not. The legislature subsequently enacted other restrictions on when a person convicted of murder could be paroled, which were not disproportional in relation to the aggravated murder sentencing scheme. In 1989, the legislature enacted the sentencing guidelines, which provided for standardized sentences for a number of felonies, including murder. Offenders sentenced under the guidelines never become part of the parole system; rather, on release from

prison, they are subject to set periods of post-prison supervision. *See* OAR 213-005-0002; OAR 213-005-0004.

However, although the legislature enacted the new guidelines sentencing system, it did not repeal the provision of ORS 163.115 requiring a life sentence for murder. In *State v. Morgan*, 316 Or 553, 856 P2d 612 (1993), the court held that the sentencing guidelines impliedly repealed the provision of ORS 163.115 that a person convicted of murder must receive an indeterminate life sentence, given that it was irreconcilable with the guidelines sentences for murder. The court, however, did not find that the guidelines impliedly repealed the restrictions on parole of murderers. *Id.* at 557-58. Rather, the court read those provisions as establishing determinate mandatory minimum sentences for murder. *Id. But see State v. Stewart*, 123 Or App 432, 433, 859 P2d 1200 (1993) (De Muniz, J., concurring) (noting the analytical difficulty in treating murder sentences under ORS 163.115 as "determinate" sentences).

In 1994, the voters, by initiative, passed Measure 11, requiring mandatory minimum sentences of 25 years for murder. Measure 11 also required that the mandatory minimum sentence be applied to anyone over the age of 15 convicted of murder. In order to implement those changes, the 1995 legislature amended ORS 163.115, including the "life sentence" portion of that statute that the court had held in *Morgan* to be impliedly repealed by the guidelines. In *State v. Francis*, 154 Or App 486, 962 P2d 45, *rev den* 327 Or 554 (1998), we held that the legislature's amendment to the life sentencing provision effectively reenacted it and that determinate guidelines murder sentences under *Morgan* were no longer possible in light of the amendments. (Under the current guidelines, the greatest possible departure sentence for certain guidelines offenders convicted of murder is 20 years, which cannot be reconciled with the mandatory minimum sentence of 25 years required by Measure 11.)

Thus, post-1989 but pre-Measure 11 murderers receive "determinate" sentences under *Morgan*, followed by post-prison supervision; the parole system is never implicated. The legislature's resurrection of the life sentence for murder in 1995, however, created the current problem:

What happens after a murderer sentenced under ORS 163.115(5)(a) has served the required 25-year mandatory minimum of his or her life sentence, given that the Board has no authority to consider him or her for parole?

■        ORS 144.050 generally limits the Board's authority to parole inmates to those whose offenses were committed prior to November 1, 1989. Felonies other than aggravated murder committed after that date are subject to the sentencing guidelines and carry mandatory pre-established periods of post-prison supervision, and the Board lacks discretion as to when an offender is released. The legislature has provided one exception to this general rule that the Board has no authority to parole offenders whose offenses were committed after November 1, 1989. Oregon Laws 1989, chapter 790, section 28, provides that the statutes governing the parole of inmates "apply only to offenders convicted of a crime committed prior to November 1, 1989, and to offenders convicted of aggravated murder regardless of the date of the crime." Thus, under current law, the Board has authority to parole offenders who are serving indeterminate sentences for pre-1989 crimes and to parole aggravated murderers; the Board lacks authority to parole any other offenders, such as murderers sentenced under ORS 163.115(5)(a) to "imprisonment for life."

Defendant is correct that his sentence of imprisonment for life under ORS 163.115(5)(a) is, in effect, a sentence of life imprisonment without the possibility of parole, because nobody has the authority to parole him. The state does not dispute that this situation presents a constitutional difficulty under *Shumway,* if the Board lacks authority ever to release those sentenced to life imprisonment under ORS 163.115(5)(a). The state argues, however, that the statute need not be construed in that manner. The state argues that ORS 163.115(5)(a) "does not preclude release when the defendant has completed service of the minimum or determinate sentence." Thus, the state's position is that the 25-year mandatory minimum sentence is a determinate sentence, after which the offender is simply released rather than considered for parole. The state suggests that the "imprisonment for life" term should be construed to "mandate only lifetime supervision after release with unlimited authority to reincarcerate

upon violation of the conditions of supervision." The state notes that this interpretation "varies little" from the lifetime post-prison supervision term required for guidelines murder sentences. The problem with the state's argument is that it simply ignores the existence of the "imprisonment for life" language in ORS 163.115(5)(a); the state would have us read "imprisonment for life" to mean "imprisonment for a mandatory minimum term followed by post-prison supervision for life." We are not free to rewrite statutes in such a manner.

The state's suggested construction of the statutes is not nearly as overreaching as that of the dissent, though. As noted, the state suggests that the statutes be construed to mandate the release of those convicted of murder after the service of the 25-year mandatory minimum sentence, which would not require the Board to exercise any discretion in a manner inconsistent with the limitations placed on it by Oregon Laws 1989, chapter 790, section 28. The dissent, however, would go much further and give the Board authority to consider a person convicted of murder for parole after 25 years and, presumably, allow or deny parole based on some sort of criteria. 158 Or App at 430. The Board has no statutory authority to do such a thing.

The "imprisonment for life" provision of ORS 163.115(5)(a) is constitutionally flawed, and even the state implicitly acknowledges that if those words are given their plain, natural and ordinary meaning, the statute would not pass constitutional muster under *Shumway* and *Cannon*. The dissent, on the other hand, gives the words "imprisonment for life" a plausible interpretation, but, unfortunately, its interpretation is not permissible because it would require the Board to do something that the Board is not authorized to do. It is true, as the dissent notes, that we should try to construe statutes to be constitutional if it is possible to do so. 158 Or App at 429. There comes a point, however, where we must draw the line. If the only way a statute can be construed as constitutional is to interpret words such as "imprisonment for life" to mean "imprisonment for a mandatory minimum term followed by post-prison supervision for life," or to hold that the legislature *implicitly* authorized an administrative agency to do something that the legislature *explicitly* declared that that agency could *not* do, then we must give up

the attempt to construe the statute to be constitutional and simply trust the legislature to correct the problem.

■ The question remains, though, what is the proper sentence in this case? Actually, the state's and defendant's answers to that question are not far apart. Defendant suggests that the answer is that his life sentence should be vacated because it is unconstitutional and that his sentence should be the 25-year mandatory minimum sentence required by Measure 11, followed by the lifetime post-prison supervision term of life required for all murder or aggravated murder convictions. OAR 213-005-0004. The state, as noted, suggests that there is no need to vacate the life sentence because it should be construed to mean that defendant is entitled to release after he serves the mandatory minimum sentence required by Measure 11, followed by lifetime post-prison supervision. In short, both parties agree what the actual sentence should be, in pragmatic terms. The only question is whether we should arrive at the correct answer by holding ORS 163.115(5)(a) unconstitutional or to do so by interpreting it in such as way as to render it meaningless.

We agree that the proper sentence is the 25-year mandatory minimum sentence required by ORS 137.700(a)(A) and ORS 163.115(5)(b), followed by post-prison supervision for life in accordance with OAR 213-005-0004. The trial court, in fact, properly imposed the required mandatory minimum sentence and the lifetime post-prison supervision. The only erroneous term in the judgment is the reference to "imprisonment for life."

Remanded for resentencing; otherwise affirmed.

**WARREN, J.,** dissenting.

The majority correctly describes the history of the relevant statutes and correctly explains why the punishment for murder would be unconstitutional *if* the majority's construction of the statute were correct. Because I believe that the majority's construction is incorrect and that under the correct construction the sentence that defendant received is not disproportionate to the sentence for aggravated murder, I dissent.

The beginning point for this discussion is ORS 163.115(5), which establishes the punishment for murder. It provides:

> "(a)  A person convicted of murder, who was at least 15 years of age at the time of committing the murder, shall be punished by imprisonment for life.
>
> "(b)  When a defendant is convicted of murder under this section, the court shall order that the defendant shall be confined for a minimum of 25 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp."

Before the adoption of the sentencing guidelines, the sentence for murder was an indeterminate sentence of life imprisonment with a minimum term before there was a possibility of parole. ORS 163.115(3) (1987). In *State v. Morgan*, 316 Or 553, 856 P2d 612 (1993), the Supreme Court held that the legislature impliedly repealed that indeterminate sentence when it enacted the sentencing guidelines. In *State v. Francis*, 154 Or App 486, 962 P2d 45 (1998), we held that, by adopting ORS 163.115(5) in 1995, the legislature reinstated an indeterminate sentence of life imprisonment, with a minimum 25-year term and post-prison supervision for life, as the sentence for murder. Our conclusion in *Francis*, indeed, follows directly from the statutory language: under subsection (a) the sentence for murder is imprisonment for life, while under subsection (b) the prisoner must serve 25 years before there will be a possibility of parole or other easing of the terms of confinement. The only way that the express requirement of imprisonment for life can be consistent with the equally express provision for a minimum term is for the life imprisonment to be an indefinite term.

In his brief, which he filed before our decision in *Francis*, defendant anticipated the conclusion that we would reach in that case and argued that that result would be unconstitutional. The basis of his argument is the assertion that there is no authority actually to release him after his minimum term has expired, although there is authority to release an aggravated murderer who received a minimum term under the aggravated murder statutes. The majority essentially accepts that argument and, as a remedy for the

resulting unconstitutionality, requires that defendant be released, subject to post-prison supervision for life, at the end of the 25-year minimum term. The majority thereby reinstates the sentence that existed before the 1995 amendment to ORS 163.115, making ineffective, at least for adults, our conclusion in *Francis* that the 1995 amendment had actually changed the law.

The majority bases its conclusion not on the words of ORS 163.115 but on the statutory authority that the Parole Board has had since the adoption of the sentencing guidelines. It relies on ORS 144.050, which generally limits the Board's authority to parole inmates to those offenses that they committed before November 1, 1989, when the guidelines went into effect, and on Oregon Laws 1989, chapter 790, section 28, which provides that the parole statutes apply only to persons convicted either of felonies committed before November 1, 1989, or of aggravated murder. What the majority ignores is that both of those statutes predate the adoption in 1995 of current ORS 163.115(5), which explicitly established an indeterminate life sentence for murder and which explicitly provided for a minimum term of 25 years "without possibility of parole[.]" The necessary implication of that phrase, which the majority does not question, is that after the 25 years have passed there will be the possibility of parole. The majority apparently concludes that the legislature failed to establish a procedure for carrying out its unquestioned intent.

The majority's conclusion leads it directly to its further conclusion that ORS 163.115(5) is unconstitutional as written and that we must modify the punishment for murder that the legislature created in order to make it operate constitutionally. That is a conclusion that we should reach only when there is no alternative; if it is possible to do so, we construe a statute to be constitutional. *See Salem College & Academy, Inc. v. Emp. Div.*, 298 Or 471, 695 P2d 25 (1985); *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 687 P2d 785 (1984). So far as I can tell, the apparent flaw that the majority finds in the statute is the legislature's failure to adopt a conforming amendment to ORS 144.050 that would expressly allow the Board to grant parole to those convicted of murder; it already has the express authority to

grant parole to those convicted of aggravated murder who receive a sentence that contains the possibility of parole. That lack of a conforming amendment is of no consequence, for the legislature has done *implicitly* what it did not do *explicitly*.

In construing a statute, we must give meaning to all of its terms. ORS 174.010. To require a prisoner to serve a mandatory minimum term when the sentence is life imprisonment can have meaning only if there is a way for the prisoner to obtain release after the minimum term is over but before serving the full sentence. Before 1989 that way came through the Board's authority to release the prisoner on parole. The essential elements of the statutory statement of the term of the basic sentence for murder after the 1995 amendment are the same as they were before the guidelines were adopted. The provision for minimum terms is also similar. The legislature clearly intended that the minimum term have some meaning. It must have intended that some prisoners might serve only the minimum, while others might serve more. The only meaning that the statute can have at present is the same meaning that it had before the guidelines: a prisoner becomes eligible for parole at the expiration of the minimum term. I would therefore hold that ORS 163.115(5) creates an implied exception to ORS 144.050 and that the Board may release on parole a person sentenced to life imprisonment for murder, once the person completes the statutory minimum sentence.[1] There would, thus, be no constitutional violation. I dissent from the majority's contrary conclusion.

Edmonds, J., joins in this dissent.

---

[1] Because the current sentence for murder is the result of the actions of the 1995 legislature, the 1989 statutes on which the majority relies are not controlling to the extent that the 1995 changes superseded them.