No. 242 April 17, 2024 97

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

JAMES M. KNOPE,
*Plaintiff-Appellant,*

*v.*

Corey FHUERE,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
22CV41356; A180766

Courtland Geyer, Judge.

Submitted March 4, 2024.

Margaret Huntington and O'Connor Weber, LLC, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Plaintiff appeals from the trial court's dismissal of his petition for a writ of habeas corpus and raises one assignment of error. For the following reasons, we affirm.

"[I]n reviewing a judgment dismissing a writ of habeas corpus, we will affirm if the record, viewed in the light most favorable to the plaintiff, presents no genuine issue of material fact and the defendant is entitled to prevail as a matter of law." *Woodroffe v. Nooth*, 257 Or App 704, 705, 308 P3d 225, *rev den*, 354 Or 491 (2013).

Plaintiff's petition for writ of habeas corpus alleged the following facts about the underlying criminal case. In 1997, plaintiff was charged with aggravated murder and murder. In 1999, plaintiff entered into a plea agreement with the state and agreed to plead guilty to murder. The agreement stated that his sentence was 300 months imprisonment. After the agreement was signed, the prosecutor clarified that he would seek a sentence of life imprisonment with a mandatory minimum of 300 months imprisonment.[1]

---

[1] Plaintiff's plea and sentencing took place at a time of upheaval in Oregon's murder sentencing scheme. Although it is not explicitly stated on the record, it appears that the prosecutor's change was in response to an October 1999 amendment to ORS 163.115 that allowed the prosecutor to seek such a sentence. In February 1999, we concluded that the existing sentencing scheme provided in ORS 163.115 was "constitutionally flawed." *State v. McLain*, 158 Or App 419, 426, 974 P2d 727 (1999). Although the statute stated that a person who was convicted of murder was required to serve a minimum term before being released, we explained that the Board of Parole and Post-Prison Supervision (board) had no legal authority to grant such release. *Id.* Because the board could not parole defendants who had been sentenced to life imprisonment after they had served the minimum term, any sentence under that statute was effectively a life without parole, or an "imprisonment for life" sentence. *Id.* To address that constitutional problem, we held that the correct sentence was a determinate sentence of 300 months imprisonment, with lifetime post-prison supervision. *Id.* at 427.

In October 1999, the legislature amended ORS 163.115 to correct the constitutional error that we had identified in *McLain*. Or Laws 1999, ch 782, § 2. That amendment created a sentence of life with the possibility of parole after 300 months. *Id.* We identified the time period between February 17, 1999 and October 23, 1999, the time when the 300-month determinate sentence was the only lawful choice, as the "*McLain* window." *State v. Giles*, 254 Or App 345, 348, 293 P3d 1086 (2012).

After the *McLain* window closed, uncertainty over the legally permissible sentence for murder committed before the statutory change spawned further litigation. In several cases, defendants raised *ex post facto* challenges to their sentences of life imprisonment with the possibility of parole after 300 months. We later held that defendants who had committed murder prior to the *McLain* window, but who were sentenced after it ended, could be sentenced to life with the

At that time, counsel agreed to submit a sentencing memorandum and plaintiff did not move to withdraw his plea. At sentencing, plaintiff was represented by a different attorney who argued against the prosecutor's recommendation, both as a breach of the plea agreement and as an *ex post facto* violation.

The court disagreed with plaintiff's arguments and sentenced him to life imprisonment with a 300-month mandatory minimum term. After his direct appeal was unsuccessful, plaintiff sought post-conviction relief, raising claims of trial court error and of ineffective and inadequate assistance of counsel that were primarily related to counsel's representation concerning his plea. Those claims were also unsuccessful.

After he had served 300 months in prison, plaintiff filed a petition for writ of habeas corpus and alleged that, under the terms of his plea agreement, he was entitled to immediate release. The trial court dismissed plaintiff's petition, agreeing with the state that plaintiff had raised the same claim in prior litigation (direct appeal and post-conviction) and that plaintiff was collaterally attacking his sentence, which was not a cognizable claim in a habeas corpus case. This appeal followed.

We conclude that the trial court did not err in dismissing plaintiff's petition for writ of habeas corpus. Initially, we pause to observe that no evidence in this record supports the trial court's determination that plaintiff's direct appeal raised the same claim that is at issue in his habeas corpus petition. Moreover, in his post-conviction case, plaintiff raised claims of trial court error and of ineffective and inadequate assistance of counsel. Here, by contrast, plaintiff claimed that he is entitled to immediate release because he

---

possibility of parole after 300 months because "there is no *ex post facto* violation in applying retroactively a new and generally ameliorative sentencing statute to replace the one that was in effect at the time the crime was committed." *State v. Haynes*, 168 Or App 565, 567-68, 7 P3d 623, *rev den*, 331 Or 283 (2000). And in *Giles*, we held that defendants who had committed their crimes during the *McLain* window but who were sentenced after the amendments went into effect could not receive sentences of life with the possibility of parole after serving 300 months in prison because such sentences would violate *ex post facto* protections. 254 Or App at 351-52. We mention this legal history to recognize the complexity of the law surrounding plaintiff's claims in this case.

"is currently being subjected to continued unlawful physi-
cal restraint and confinement beyond the contractual plea
agreement." On its face, the claim in this case differs from
those raised in his post-conviction case.

Nevertheless, to maintain his habeas claim for
immediate release, plaintiff had to produce evidence that he
was entitled to release after 300 months. *See* ORS 34.610(2)
(providing that a prisoner will be discharged if "[t]he orig-
inal imprisonment was lawful, yet by some act, omission
or event which has taken place afterwards, the party has
become entitled to be discharged"). Relying on his signed
plea agreement, plaintiff alleged that he was entitled to
release after he served 300 months in prison. Because he had
completed that sentence, he argued that the Department of
Corrections' (DOC) failure to release him was a breach of
that agreement. But plaintiff cited no law, and we are aware
of none, that provides that a signed plea agreement estab-
lishes the amount of time a person is lawfully confined to
DOC custody. In fact, the law demonstrates that DOC cal-
culates sentences based on judgments. *See*, *e.g.*, OAR 291-
100-0027(1) (providing that "staff will review the judgment
document for information that is necessary to properly com-
pute the sentence"). Plaintiff likewise cited no law, and we
are aware of none, that provides that the remedy for breach
of a plea agreement is immediate release from custody.

Essential to plaintiff's claim, therefore, is a judg-
ment that reflects the terms of his plea agreement, to wit, a
determinate sentence of 300 months of imprisonment. And
under the judgment in plaintiff's case, he was sentenced to
life imprisonment with the possibility of parole after serving
300 months' imprisonment, not a 300-month determinate
sentence ending in release. Thus, plaintiff's claim necessar-
ily includes a collateral attack on his judgment. Because a
collateral attack on a judgment is not cognizable in a habeas
corpus case, the trial court did not err in dismissing plain-
tiff's petition. *See* ORS 138.540(1) ("Except as otherwise
provided in ORS 138.510 to 138.680, a petition pursuant to
ORS 138.510 to 138.680 shall be the exclusive means, after
judgment rendered upon a conviction for a crime, for chal-
lenging the lawfulness of such judgment or the proceedings

upon which it is based."); *Mora v. Maass*, 120 Or App 173, 176, 851 P2d 1154 (1993), *aff'd by an equally divided court*, 319 Or 570, 877 P2d 641 (1994) ("[P]ost-conviction relief is the sole method for collaterally challenging the lawfulness of a criminal conviction and sentence.").

Affirmed.