Argued and submitted February 4, reversed and remanded February 12, 2020

Vikram ANANTHA
and Micha Gross,
*Plaintiffs-Appellants,*

*v.*

Beverly CLARNO,
Oregon Secretary of State,
*Defendant-Respondent.*

Marion County Circuit Court
19CV44301; A172786

461 P3d 282

Seeking to amend the Oregon Forest Practices Act, ORS 527.610 to 527.770; ORS 527.990(1); ORS 527.992, and related statutory provisions, plaintiffs proposed three initiative petitions for the November 3, 2020, general election. The Oregon Secretary of State rejected each proposed measure, concluding that each initiative petition violated the "single subject" requirement of Article IV, section 1(2)(d), of the Oregon Constitution, which provides that a "proposed law *** shall embrace one subject only and matters properly connected therewith." On review, the trial court upheld the secretary's determination, granting summary judgment in her favor. Plaintiffs appealed. *Held*: The single subject of plaintiffs' initiative petitions is the regulation and protection of forestlands. The trial court therefore erred in granting the secretary's motion for summary judgment on the basis that plaintiffs' initiative petitions violated the single-subject rule and should have instead granted summary judgment to plaintiffs.

Reversed and remanded.

Daniel J. Wren, Judge.

Jesse A. Buss argued the cause for appellants. Also on the briefs were Willamette Law Group, Thomas M. Christ, and Sussman Shank LLP.

W. Michael Gillette argued the cause for respondent. Also on the brief were David A. Anderson, Jessie A. Schuh, and Schwabe, Williamson & Wyatt, PC.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief *amicus curiae* for State of Oregon.

Steven C. Berman and Stoll Stoll Berne Lokting & Shlachter P.C. filed the brief *amicus curiae* for Our Oregon.

Before Lagesen, Presiding Judge, and Armstrong, Judge, and Ortega, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

Plaintiffs seek to amend Oregon's Forest Practices Act, ORS 527.610 to 527.770; ORS 527.990(1); ORS 527.992, and related statutory provisions through Oregon's initiative process. To that end, they proposed three initiative petitions for the November 3, 2020, general election: Initiative Petitions (IPs) 35, 36, and 37. The Oregon Secretary of State rejected each proposed measure; she determined that each one violated the so-called "single subject" requirement of Article IV, section 1(2)(d), of the Oregon Constitution, that is, the requirement that a "proposed law *** shall embrace one subject only and matters properly connected therewith." On review under ORS 246.910(1), the trial court upheld the secretary's determination, and plaintiffs appealed, ORS 246.910(3). Reviewing for legal error, *State v. Mercer*, 269 Or App 135, 137, 344 P3d 109, *rev den*, 357 Or 299 (2015), we conclude that none of the measures violates the single-subject requirement of Article IV, section 1(2)(d), and that plaintiffs are entitled to judgment as a matter of law. We therefore reverse and remand with directions to enter judgment in favor of plaintiffs.

Our state constitution reserves to the people the power to propose laws. Or Const, Art IV, § 1(2). As with laws proposed in and by the legislature, a law proposed by initiative must "embrace one subject only and matters properly connected therewith." Or Const, Art IV, § 1(2)(d); Or Const, Art IV, § 20 ("Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title."); *OEA v. Phillips*, 302 Or 87, 100, 727 P2d 602 (1986) (concluding that the "one subject" requirements in Article IV, section 1(2)(d), and Article IV, section 20, "should be given the same meaning").

Plaintiffs seek to amend the Forest Practices Act and other statutory provisions addressing forestry. Specifically, they propose to place three prospective initiatives on the November 3, 2020, ballot: IP 35, IP 36, and IP 37. We have included the text of each measure in the appendix to this opinion so do not recite that text in full here. A summary, however, is in order to give context for our analysis, and

plaintiffs have supplied an able one in their brief that the secretary does not seriously dispute:

"The measures' main substantive provisions include:

"1.   Limits clearcut logging activity near certain bodies of water (IP 35, § 2; IP 36, § 1);

"2.   Directs the Board of Forestry to adopt rules regulating clearcut logging that apply to small tract forestlands (IP 35, § 3; IP 36, § 2);

"3.   Prohibits the aerial application of pesticides within 500 feet of all forest waters (IP 35, § 4; IP 37, § 1);

"4.   Creates public notice requirements for certain forest operations involving the aerial application of pesticides to forestland (IP 35, § 5; IP 37, § 2);

"5.   Increases the buffer (from 60 feet to 500 feet) governing the aerial application of pesticides for forest operations adjacent to dwellings and schools (IP 35, § 6; IP 37, § 3);

"6.   Restricts logging operations in high-hazard landslide zones (IP 35, § 7);

"7.   Reduces financial conflicts of interest in the Board of Forestry (IP 35, § 10; IP 36, § 3; IP 37, § 5) in implementing the act (IP 35, § 11; IP 36, § 4; IP 37, § 6); and

"8.   Creates a funding mechanism (IP 35, § 12)."

As required by ORS 250.045(1), plaintiffs submitted the prospective petitions to the secretary for her review. After reviewing public comments, the secretary notified plaintiffs that she was rejecting all three proposed measures because she "has determined [that each measure] does not comply with the procedural requirements established in the Oregon Constitution for initiative petitions, particularly the single subject requirement."

Plaintiffs then filed this action under ORS 246.910(1), seeking judicial review of the secretary's rejection of each of the proposed measures. Plaintiffs alleged that the secretary had erroneously determined that each of the measures violated the single-subject requirement of Article IV, section 1(2)(d). On cross-motions for summary judgment, the trial court concluded that "each of the Initiative Petitions violates

the 'single-subject' provision of Article IV, section 1(2)(d) of the Oregon Constitution and finds [the secretary] properly rejected the three (3) initiative petitions." Accordingly, the court denied plaintiffs' motion for summary judgment, granted the secretary's motion for summary judgment, and entered a general judgment in favor of the secretary. Plaintiffs appealed.

On appeal, plaintiffs contend that the trial court erred in determining that each proposed measure violates the single-subject requirement of Article IV, section 1(2)(d); they argue that each measure comports with the requirements of that provision as it has been construed by the Supreme Court and by our court. The secretary responds that the trial court correctly affirmed her decision to reject the proposed measures, arguing in the main that the secretary's decision to reject the measures was proper in light of the statutes and rules that govern the secretary's review of proposed initiative measures.

"We generally review a trial court's ruling on cross-motions for summary judgment to determine whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law." *Hicks v. Central Point School Dist.*, 270 Or App 532, 540, 348 P3d 307, *rev den*, 357 Or 743 (2015) (internal quotation marks omitted). Here, no factual disputes exist; the only question is whether the rejected measures comply with the constitutional single-subject requirement of Article IV, section 1(2)(d). That question is one of law, so we review for legal error. *Mercer*, 269 Or App at 137.

As noted, the Oregon Constitution contains two single-subject provisions: Article IV, section 1(2)(d), which applies to initiative measures, and Article IV, section 20, which applies to legislative acts. Although the relevant wording of the two provisions varies in minor respects, the Supreme Court has determined that they "should be given the same meaning." *Phillips*, 302 Or at 100. That means that the case law interpreting either provision informs our analysis of whether a particular proposed initiative satisfies the single-subject requirement of Article IV, section 1(2)(d).

Under that case law, a two-part framework governs the determination whether a proposed law or constitutional amendment comports with the single-subject requirement. Under the first step of the analysis, a reviewing court asks whether it can identify a "unifying principle logically connecting all provisions" in the measure, such that it can be said that the measure embraces a single subject. *State ex rel Caleb v. Beesley*, 326 Or 83, 91, 949 P2d 724 (1997); *McIntire v. Forbes*, 322 Or 426, 443-44, 909 P2d 846 (1996). If a reviewing court cannot identify that type of logical "unifying principle," then the measure violates the single-subject requirement. *Phillips*, 302 Or at 100. If the court is able to identify the necessary unifying principle, the court examines whether any "other matters" contained in the measure are "properly connected" to the unifying principle identified by the court. *Id*.; *see also Caleb*, 326 Or at 93.

As the Supreme Court has explained, the standard "should be liberally construed to uphold legislation." *Phillips*, 302 Or at 95. "The conflict between the constitution and the law should be palpable and clear before the courts should disregard a legislative enactment upon the sole ground that it embraces more than one subject." *State of Oregon v. Shaw*, 22 Or 287, 289, 29 P 1028 (1892). In view of that liberal construction, a proposed law that addresses a single substantive area of the law, even if the proposal "includ[es] a wide range of connected matters intended to accomplish the goal of that single subject," generally satisfies the single-subject requirement. *Caleb*, 326 Or at 91. Said another way, the term "subject" for purposes of the constitutional single-subject requirements "is to be given a broad and extensive meaning" to give legislative drafters "full scope to include in one act all matters having a logical or natural connection." *Lovejoy v. Portland*, 95 Or 459, 466, 188 P 207 (1920).

Although by now plenty of cases illustrate the analysis, the Supreme Court's decision in *Eastman v. Jennings-McRae Logging Co.*, 69 Or 1, 138 P 216 (1914), is a useful comparator because it addressed a measure not too different from IP 35, IP 36, and IP 37. At issue in *Eastman* was whether Oregon Laws 1911, chapter 278, section 13, complied with the requirement of Article IV, section 20, that

a legislative act embrace only one subject, and that that subject be contained in the legislative title of the act. That measure, like IP 35, IP 36, and IP 37, contained a number of different provisions aimed at protecting forests. As described in the opinion, the measure aimed to protect forests by addressing forest fire prevention, creating a board of forestry, creating a state forester and deputy, providing for the appointment and compensation of fire wardens, providing for penalties for violations of the act, providing for civil remedies, and repealing specified existing provisions. *Eastman*, 69 Or at 9-10. The defendant in the case argued that the title of the measure, which omitted to mention that the act created civil remedies, violated the Article IV, section 20, requirement that the title of an act express the act's one subject. *Id.* at 10. The Supreme Court disagreed, explaining that "the protection of the forests is the subject of said act" for purpose of the single-subject requirement, and that the title's statement that the act was "for the protection of the forests of the state of Oregon" adequately captured that one subject. *Id.* That the title did not mention the civil remedies provision was not a problem because that provision was a matter "properly connected" to the measure's one subject of forest protection, and matters "properly connected" were not required to be mentioned in the title of a legislative act. *Id.*

*Lovejoy*, 95 Or 459, supplies another helpful illustration (even though it is about an act pertaining to insurance and not forests). As aptly summarized by the Supreme Court in *Caleb*, the act at issue in *Lovejoy* contained wide-ranging provisions addressing insurance:

> "The enactment challenged in *Lovejoy v. Portland*, 95 Or 459, 465, 188 P 207 (1920), set forth conditions under which local and foreign businesses could be started and conducted, regulated the insurance department, prescribed jurisdiction and powers of the insurance commissioner, made provisions for ensuring the solvency of insurance companies, addressed qualification and licensure of agents, specified types and forms of insurance various companies could offer, made provisions to prevent rate discrimination, and prescribed various other matters relating to the insurance business, including the preemption of local ordinances."

*Caleb*, 326 Or at 90-91 (citing *Lovejoy*, 95 Or at 461-62). Rejecting the contention that the measure violated the single-subject requirement of Article IV, section 20, the court explained that "[t]he general object and purpose of [the act] is to regulate and supervise insurance, other than state industrial accident insurance" and, further, that "[w]hatever means may tend directly or indirectly to accomplish this object may properly be included in the act" without offending the constitution. *Lovejoy*, 95 Or at 467.

A third case, *McIntire*, 322 Or 426, is useful because, in that case, the court sustained a single-subject challenge to a proposed law, thereby providing us with a rare but concrete example of the type of disconnected hodgepodge of legislation that the single-subject requirement operates to combat. In *McIntire*, the court considered whether a legislative enactment met the Article IV, section 20, single-subject requirement. Although nominally about funding for light rail, the act did eight different things, including things not even remotely related to the field of transportation, let alone connected to light rail:

> "SB 1156 * * * (1) provides state funding [and land use procedures] for light rail, (2) expands the availability of card-lock service stations, (3) promotes regional problem solving in land use matters, (4) regulates confined animal feeding, (5) preempts local pesticide regulation, (6) adopts new timber harvesting rules, (7) grants immunity to shooting ranges for noise pollution, and (8) protects salmon from cormorants."

*McIntire*, 322 Or at 444 (brackets in original; internal quotation marks omitted). The court held that the measure violated the constitutional single-subject requirement, concluding that provisions of the measure itself did not reveal a logical, unifying principle, and the legislature had not done that either. *Id*. at 445.

Considering IP 35, IP 36, and IP 37 in view of *Eastman*, *Lovejoy*, and *McIntire*, we conclude that the measures comport with the single-subject requirement of Article IV, section 1(2)(d). As in *Eastman* and *Lovejoy*, it is relatively easy to identify a logical, unifying principle connecting the provisions of each measure: the regulation and

protection of forestlands. All of the provisions in each measure address that subject or, as in the case of the civil remedies provision in *Eastman*, are matters "properly connected" to the regulation and protection of forestlands. And none of the measures share the grab-bag quality that led the *McIntire* court to invalidate the light-rail funding measure at issue in that case.

The secretary resists that conclusion. She offers several reasons why we should uphold her decision to reject IP 35, IP 36, and IP 37. None persuades us.

First, the secretary argues that "the Oregon Constitution, ORS chapter 250, OAR 165-014-0028, and the [*State Initiative and Referendum*] *Manual* all confer on the Secretary discretion regarding the manner in which she evaluates whether initiative provisions are compliant with constitutional procedural requirements, among them the 'single subject' rule." That means, the secretary argues, that we, the court, "must not second-guess the Secretary's exercise of the authority expressly delegated to her by the Oregon Constitution, the legislature, and the applicable administrative rules." But in this instance, the express basis for the secretary's rejection of IP 35, IP 36, and IP 37 was that the measures themselves did not comply with the single-subject requirement of the Oregon Constitution, not for failure to comply with the secretary's rules or any other source of law. And, as we have said, whether a measure complies with the single-subject requirement of Article IV, section 1(2)(d), is a question of law, making our review for legal error. *Mercer*, 269 Or App at 137. In other words, the single-subject question is not a discretionary question on which the secretary is entitled to deference from courts.

Second, and relatedly, the secretary argues that we should uphold her decision to reject the measures on single-subject grounds because of the way that plaintiffs titled IP 35, IP 36, and IP 37 on the form (the SEL 310) that plaintiffs used to submit the measures to the secretary for her review. The secretary notes that, on those forms, plaintiffs described all measures as pertaining to "forest waters." The secretary contends further that, if we treat "forest waters" as the subject of each measure, then each measure violates

the single-subject requirement because each measure contains provisions that address forest practices more broadly, and not forest waters particularly. But the secretary has identified no authority for the proposition that a title identified by a measure's proponent on the SEL 310 governs the determination of a measure's subject for purposes of the constitutional single-subject requirement, and the law is affirmatively to the contrary. As the Supreme Court explained in *McIntire*, the first step in assessing single-subject compliance is to "look[] first at the body of the act itself and seek[] to determine whether all provisions in the act relate to the same topic and whether they are naturally connected." 322 Or at 441, 443-44. If that examination reveals a unifying principle, as it has here, then the inquiry is over—the act satisfies the single-subject requirement. *See id*. at 443-44.

Beyond that, the Supreme Court has held expressly that the SEL 310, and the choices made by a measure's sponsor on it, do not control the identification of a measure's subject matter for the purpose of determining a proper ballot title for the measure:

> "We cannot accept that explanation, which would make the Attorney General the prisoner of a choice—perhaps informed, perhaps not, perhaps even intentionally duplicitous—by a measure's sponsor to check one or another box on a form. As our earlier recitation of the pertinent statutory tasks assigned to the Attorney General shows, that officer is charged by legislation with drafting a ballot title that properly labels a proposed initiative measure. No piece of paper, indeed no rule, created by the Secretary of State can relieve or excuse the Attorney General from that statutory obligation."

*Christ/Tauman v. Myers*, 339 Or 494, 499, 123 P3d 271 (2005). That contradicts the notion that a title identified on the SEL 310 determines the measure's subject matter for purposes of the single-subject requirement or otherwise.

Finally, the secretary urges us generally to conclude that IP 35, IP 36, and IP 37 do not comply with the single-subject requirement, even if we conclude—as we have—that the title listed on plaintiffs' SEL 310 form is not a binding statement of the subject of each proposed measure. Many of those arguments, however, appear to treat the subject

of each measure as the protection of forest waters, rather than the subject that we have identified: the regulation and protection of forestlands. Beyond that, for the reasons explained above, we believe that the analyses in *Eastman* and *Lovejoy* compel the conclusion that each of the measures here complies with Article IV, section 1(2)(d)'s single-subject requirement.

We therefore conclude that the trial court erred when it determined that IP 35, IP 36, and IP 37 violated Article IV, section 1(2)(d), and granted the secretary's motion for summary judgment on that basis. Because the measures comport with the single-subject requirement, the court should have granted plaintiffs' motion for summary judgment instead. We therefore reverse and remand for entry of judgment in favor of plaintiffs.

Reversed and remanded.

APPENDIX

Exhibit 3

Text of IP-35

**Oregon Forest Waters Protection Act**

WHEREAS, a majority of Oregonians get their drinking water from waters originating in Oregon's forests, as more than 75 percent of Oregon's municipal water supplies are sourced from public and private forestlands; and

WHEREAS, Oregon has failed to keep pace with neighboring states and federal forest agencies in its protections of forest waters; and

WHEREAS, Oregon law allows more intensive logging closer to rivers, streams, lakes and wetlands than neighboring states, which erodes banks, muddies waters, removes shade, raises water temperatures and depletes water supplies; and

WHEREAS, Oregon law allows the aerial application of toxic pesticides across broader areas of forest watersheds than neighboring states and federal forest agencies, which affects forest waters and endangers the health of residents in front-line communities throughout rural Oregon; and

WHEREAS, Oregon law allows more intensive logging in landslide hazard locations than neighboring states, which increases sediment and debris in forest waters and the costly treatment of drinking water for Oregonians; and

WHEREAS, plantation-style, industrial management of forestlands, which results in dense rows of even-aged trees, has increased the risk of larger and hotter forest fires that damage fragile watersheds and reduce forest water storage; and

WHEREAS, better and more up-to-date forest management and harvest practices will help to reduce the risk of severe forest fires by increasing the expanse of fire-resistant older trees that act as natural fire breaks adjacent to forest waters; and

WHEREAS a special exemption in Oregon law allows conflicts of interest in setting and enforcing timber policies by the Board of Forestry and subsidiary committees that otherwise would be prohibited under state ethics laws; and

WHEREAS, a warming climate and more volatile weather patterns necessitate stronger practices to protect our drinking water supplies and maintain healthy forests across the state; and

WHEREAS, clean and protected forest waters are vital to our families and our communities for use in the home and for recreation, tourism and businesses in every sector of our economy;

THEREFORE, the people of Oregon, find it necessary to update and improve Oregon laws to better protect our health and safety and to promote our economic well-being by protecting and preserving Oregon's forest waters.

**Be it enacted by the People of the State of Oregon:**



RECEIVED
9 Jul 2019    4:10 PM
Elections Division

Exhibit 3 - Page 1 of 13

## POLICY AND PURPOSES

**Section 1.** (a) The purpose of this Act, and the policy of the State of Oregon, is to protect forest waters on state, private, and local government owned forestlands in Oregon.

(b) The provisions of this Act shall be interpreted consistently with the over-riding policy objective stated in this section and shall not be limited by any policy set forth in the Oregon Forest Practices Act that could conflict with or be interpreted to conflict with this over-riding policy.

(c) The people of Oregon find that Oregon's forest waters are threatened.

(d) The people of Oregon further find that significant and immediate threats to Oregon forest waters are caused by aerial spraying of pesticides, logging adjacent to forest waters and logging-associated forest operations on high landslide hazard locations.

## UPDATE PROTECTIONS OF FOREST WATERS FROM ADJACENT LOGGING

**Section 2.** (a) Notwithstanding any other provision of Oregon law, clearcut logging and associated forest operations are prohibited:

(1) Within 100 feet of fishbearing streams, large and medium streams, significant wetlands, wetlands five acres or larger, and streams with domestic water use; and,

(2) Within 50 feet of all perennial streams, lakes, wetlands larger than one half an acre, and small non fishbearing streams subject to rapidly moving landslides as defined in ORS 195.250(3).

(b) The distances set forth in subsection (a) of this section shall be measured as horizontal distances from the forest waters and are intended to be implemented as exact minimum distances, not averages of variable distances over some unit of stream length within a harvest area.

(c) The minimum areas within which clearcut logging and associated forest operations are prohibited in subsection (a) of this section are subject to site-specific limited exceptions as specified in a written plan for operation approved by the State Forester for:

(1) maintenance of existing road crossings and unavoidable yarding corridors to the minimum size necessary provided an additional contiguous riparian area equal in size to that covered by the road crossing or yarding corridor remains unharvested and the impacted area is rehabilitated to the maximum extent practicable;

(2) thinning of small, under-canopy vegetation in a stand that best available information demonstrates is both necessary and effective to mitigate the risk of fire within the defensible space of dwellings, public buildings or critical built infrastructure, or to allow the safe use of

2

Exhibit 3 - Page 2 of 13

prescribed fire as a forest restoration tool on dry forest types such as those in Southwest and Eastern Oregon.

(3) thinning of small, under-canopy vegetation in a stand that best available information demonstrates will enhance the resilience of the riparian area to drought, fire or to restore properly functioning riparian conditions provided that these operations shall first be reviewed and approved by a state-employed specialist in aquatic and riparian functions.

(d) The Department of Forestry may increase the size of areas specified in subsection (a) of this section, or specify additional restrictions on forest operations within these areas, to protect the quality or quantity of any or all forest waters as necessary to comply with state water quality standards, the protection goals of the Oregon Forest Practices Act, or to avoid impacts to threatened and endangered fish and wildlife species and habitats identified pursuant to ORS 527.710(3)(a), based on the best available information, significant new information, or changing climatic conditions.

**Section 3.** (a) The Board of Forestry shall adopt new rules for clearcut logging adjacent to forest waters on small tract forestlands that shall apply only to small tract forestland ownerships with 20 percent or more total acreage subject to no-harvest water protection restrictions under section 2 of this Act. Upon final adoption of those rules, the prohibitions in Section 2 shall not apply to small tract forestland ownerships with 20 percent or more total acreage otherwise subject to no-harvest water protection restrictions under section 2 of this Act.

(b) In developing rules under this section, the Board shall balance the regulatory impact of sections 2 and 3 of this Act with the policy and purposes outlined in section 1 of this Act while minimizing the threat of harm to forest waters.


### UPDATE FOREST WATERS PROTECTIONS FROM AERIAL SPRAYING

**Section 4.** (a) Aerial application of pesticides within 500 feet of all forest waters is prohibited. The distances shall be measured as the horizontal distance from the forest waters and are intended to be implemented as exact minimum distances, not averages or variable distances over some unit of stream length.

(b) The prohibitions established in this section are in addition to, and not in lieu of, any other prohibitions on pesticide application established by law.

**Section 5.** (a) The Department of Forestry shall maintain an electronic reporting and notification system for pesticide operators, timber owners or landowners proposing to conduct a forest operation involving an aerial application of pesticides to forestland outside the areas in which such application is prohibited pursuant to section 4 of this Act.

(b) A pesticide operator, timber owner, or landowner must file notice of a forest operation involving an aerial application of pesticides to forestland with the State Forester no later than 14 business days prior to the proposed date of the application and no earlier than 21 business days prior to the proposed date of the application. Such notice shall include, at a minimum:

3

Exhibit 3 - Page 3 of 13

(1)  the name and business address of the pesticide operator, timber owner, landowner, and aerial pesticide applicator;

(2)  the pesticide product common name or brand name and the name of any carrier substance to be used for the pesticide product and any registration number issued for the pesticide product by the United States Environmental Protection Agency, the Oregon Department of Agriculture, or any other federal or state administrative agency;

(3)  the total amount and concentration of the pesticide and any substance used to enhance the effectiveness of the pesticide product expected to be used;

(4)  the proposed date for the aerial application of pesticides; and,

(5)  a legal description and map for the proposed area for the application.

(c)  Upon receipt of a notice required by subsection (b) of this section, the Department shall send notice to any person who has requested notification of planned pesticide applications, submitted a valid e-mail address to the Department, and has provided a physical address that is within one mile of the proposed aerial application of pesticides.

(d)  Not later than January 1, 2022, the Oregon Occupational Safety and Health division of the Department of Consumer and Business Services shall update and adopt rules to ensure and protect the health and safety of persons who perform or have contact with pesticides used in any forestland application. When enacting these rules, the Oregon Occupational Safety and Health division shall consult with the Oregon Health Authority and the Department of Environmental Quality.  The provisions of subsection 8(c) of this Act do not apply to the rules required by subsection (d) of this section.

**Section 6.**  ORS 527.672 is amended as follows:

When a forest operation involves applying [*herbicides*] **pesticides** by aircraft near an inhabited dwelling or school, the operator [*is responsible for leaving an unsprayed strip of at least 60*] **shall not spray the area within 500** feet adjacent to the dwelling or school. The responsibility of the operator under this section is in addition to any responsibility of the aerial pesticide applicator under ORS chapter 634 **or any provision of this Act.**

**UPDATE PROTECTIONS OF FOREST WATERS IN HIGH RISK LANDSLIDE ZONES**

**Section 7.**  (a)  State Forester approval of a written plan for operation is required prior to logging or other forest operations on, or which may affect, any site that has been identified by the State Forester as of November 3, 2020, as a high landslide hazard location.

(b)  The State Forester shall not approve operations on a high landslide hazard location unless:

(1)  best available information supports a determination that the proposed forest operation will not increase the risk, frequency, magnitude or extent of a landslide or landslides that could deliver sediment or debris to forest waters; and,

4

Exhibit 3 - Page 4 of 13

(2)  the State Forester's determination is consistent with the recommendation of a state-employed geotechnical expert.

(c)  No later than January 1, 2022, and every two years thereafter, the Board of Forestry shall update and complete maps for state and private forestlands to identify all high landslide hazard locations that could deliver sediment or debris to forest waters and make those maps available to the public.

(d)  In addition to the high landslide hazard locations identified in subsection (c) of this section, the State Forester may identify any other areas containing features that indicate inherent instability where forest operations should be excluded or limited to avoid exacerbating the risk of landslide initiation that could deliver sediment or debris to forest waters.  For any such areas, the State Forester shall apply the requirements of subsection (b) of this section.

### IMPLEMENTATION AND ENFORCEMENT OF ACT

**Rulemaking Authority**

**Section 8.**  (a)  The Board of Forestry shall enact rules to maintain consistency with the purposes and the findings of this Act related to all forest practices affecting the quantity and quality of forest waters.  In all such rule making, the Board of Forestry shall base its decisions on the best available information, including but not limited to information related to climate change and the probable negative effects of climate change on the quality and quantity of forest waters and drinking water from forest water sources.  The Board of Forestry's rulemaking authority under this Act shall not be limited by the provisions of ORS 527.714.

(b)  When enacting rules related to logging adjacent to forest waters pursuant to sections 2 and 3 of this Act, the Board of Forestry shall consult with the Department of Environmental Quality and the Oregon Health Authority. Such rules may expand the areas and methods by which logging is restricted by this Act when necessary to protect the quality and quantity of forest waters flowing through forestlands.

(c)  When enacting rules related to the application of pesticides on forestlands adjacent to forest waters pursuant to sections 4 to 6 of this Act, the Board of Forestry shall consult with the Department of Fish and Wildlife, the Department of Environmental Quality and the Oregon Health Authority.  Such rules may expand the areas within which the aerial application of pesticides is prohibited when necessary to protect the quality of forest waters.

(d)  When enacting rules related to landslide hazards affecting forest waters, pursuant to section 7 of this Act, the Board of Forestry shall consult with the Department of Geology and Mineral Industries. Such rules may expand the areas in which logging is restricted when necessary to protect the quality of forest waters.

**Emergency Exceptions**

5

Exhibit 3 - Page 5 of 13

**Section 9**.  The provisions of this Act and any rules promulgated pursuant to this Act may be suspended temporarily by the State Forester for an emergency that poses hazards to public health, safety or property, including but not limited to firefighting.  Any suspensions may not exceed 60 calendar days unless renewed with a subsequent finding of necessity by the State Forester. For each suspension and renewal of suspension pursuant to this section, the State Forester shall provide an after-incident report to the Board of Forestry, posted on the Department's website, detailing the reasons for and effectiveness of the suspension and the effect of the suspension on the affected forest waters.

**Elimination of Conflicts of Interest**

**Section 10.**  ORS 526.009 is amended as follows:

(1)  There is created a State Board of Forestry consisting of seven members appointed by the Governor. The members appointed to the board shall be subject to confirmation by the Senate as provided in ORS 171.562 and 171.565. The Governor shall designate one member of the board as chairperson to hold that position until that member's term expires or until relieved by the Governor as provided in subsection (6) of this section. The chairperson shall have such powers and duties as are provided by the rules of the board.

(2)  The term of office of a member of the board is four years. A member shall be eligible for reappointment, but no member shall serve more than two consecutive full terms. In case of a vacancy for any cause, the Governor shall make an appointment as provided in subsection (1) of this section.

(3)  Appointments made by the Governor under subsection (1) of this section shall include appointment of at least one member from each of the forest regions established under ORS 527.640 and the rules adopted thereunder by January 1, 1987.

(4)  No more than three members of the board may derive any significant portion of their income directly from persons or organizations that are subject to regulation under ORS 527.610 to 527.770, 527.990(1) and 527.992.

**(a)  Any member of the board who derives any significant portion of their income directly from persons or organizations that are subject to regulation under ORS 527.610 to 527.770, 527.990(1) and/or 527.992 shall be considered to have an actual conflict of interest regarding any action, decision, or recommendation as a member of the board regarding forest waters or any provision of this Act.**

**(b)  Any member of the board with an actual conflict of interest as set forth in subsection (4)(a) of this section must announce publicly the nature of the conflict.  After announcing the nature of the conflict, any such member may participate as a public official in any discussion or debate on the issue out of which the actual conflict arises but may not vote on the issue.**

6

Exhibit 3 - Page 6 of 13

(5)  Except as provided in subsection (4) of this section, no member of the board shall have any relationship or pecuniary interest that would interfere with the member representing the public interest.

(6)  The Governor may at any time remove any member of the board for inefficiency, incompetence, neglect of duty, malfeasance in office, unfitness to render effective service or failure to continue to meet the criteria of appointment pursuant to this section.

**Section 11.**  (a)  Any action, decision or recommendation by any person acting in a capacity as a public official regarding forest waters or any provision of this Act which would be to the private pecuniary benefit or detriment of the person or the person's relative or any business which the person or a relative of a person is associated, shall be considered an actual conflict of interest regardless of whether the private pecuniary benefit or detriment arises out of circumstances described in ORS 244.020(13)(a) or (c).

(b)  Notwithstanding ORS 244.120(1)(c), any public official met with an actual conflict of interest as set forth in subsection (a) of this section must announce publicly the nature of the conflict.  After announcing the nature of the conflict, any such public official may participate as a public official in any discussion or debate on the issue out of which the actual conflict arises but may not vote on the issue.

**Redirection of Revenues to Fund Fire Resiliency and Forest Waters Protection**

**Section 12.**  ORS 321.017 is amended as follows:

(1)  In addition to the taxes levied under ORS 321.015 (1) to (4), there hereby is levied a privilege tax upon taxpayers on the harvesting of all merchantable forest products harvested on forestlands in the amount provided in subsection (2) of this section.

(2)  The rate of tax levied in subsection (1) of this section shall be established annually at the beginning of each calendar year by the board of directors of the Oregon Forest Resources Institute, at a rate not to exceed 75 cents per thousand feet, board measure, adjusted annually for inflation since 1991 based on the Consumer Price Index for All Urban Consumers, West Region (All Items) as published by the Bureau of Labor Statistics of the United States Department of Labor for the Portland, Oregon, area.

(3)  The tax shall be measured by and be applicable to each per thousand feet, board measure, and such shall be subject to and determined by the procedures and provisions of ORS 321.015 (5) and (6).

(4)  The tax levied by subsection (1) of this section shall be due and payable to the Department of Revenue in the manner and procedure, including penalties and interest, as set forth for the collection of the privilege tax in ORS 321.005 to 321.185.

(5)  The revenue from the tax levied by subsection (1) of this section shall be remitted to the State Treasurer who shall deposit it in a suspense account established under ORS 321.145(1).  After

7

Exhibit 3 - Page 7 of 13

payment of refunds, which shall be paid in the same manner as other forest products harvest tax refunds are paid in ORS 321.145(2)[,]:

**(a)  one-third of** the balance of the additional tax imposed under subsection (1) of this section shall be deposited in the Oregon Forest Resources Institute Fund[.]**;**

**(b)  one-third  of the balance of the additional tax imposed under subsection (1) of this section shall be allocated to the Department of Forestry for the purposes of enforcing and administering the provisions of this Act and for technical assistance;**

**(c)  one-third of the balance of the additional tax imposed under subsection (1) of this section shall be allocated to the Department of Forestry for the purpose of protecting forest waters by supporting measures for reducing or eliminating hazards to critical built infrastructure as well as homes and public buildings that rely on forest waters as their drinking water source areas in wildfire hazard zones identified by the Department of Forestry.  These measures may include the provision of information, technical assistance and financial assistance by the Department of Forestry for property owners and residents in wildfire hazard zones beyond what is otherwise required by the wildfire hazard mitigation provisions of the Oregon Building Codes Division of the Department of Consumer and Business Services.**

(6)  **The revenues allocated pursuant to subsection (5)(b) and subsection (5)(c) of this section shall be in addition to, and not in lieu of, any other revenues allocated to the Department of Forestry pursuant to ORS 321.015(3) or any other provision of law.**

**Written Plans**

**Section 13.**  (a) The Department shall adopt rules setting forth the requirements and procedures for any written plan that may be submitted pursuant to section 2 or section 7 of this Act.  Those rules, in the least, must provide that:

(1)  any such written plan approved by the State Forester shall comply with the policy, purposes and provisions of this Act;

(2)  no written plan may be approved until any member of the public and any interested person is provided an opportunity to comment on the plan.  The comment period must be at least 14 days from when the public is provided notice of the written plan; and,

(3)  before logging or associated forest operations may begin pursuant to any such written plan, the State Forester must make a final decision and approve the written plan, and the time period for filing a request for a hearing on the written plan must have expired.

(b)  Any person who provided comments on the written plan may request a hearing within 30 days after issuance of the order approving the written plan.

(1)  Upon any person requesting a hearing under subsection (b) of this section, logging or forest operations for which a written plan is required under section 2 or section 7 of this Act shall be

8

Exhibit 3 - Page 8 of 13

stayed until the hearing has concluded, a final order has issued, and all appeals have been exhausted.

(2) No undertaking may be required of the person requesting the hearing.

(3) No attorneys' fees may be awarded against any person who has requested a hearing under subsection (b) of this section, or in any appeal from any decision on any hearing, unless there was no objectively reasonable basis for requesting a hearing or pursuing an appeal.

(c) To the extent the provisions of this section conflict with ORS 527.670, ORS 527.700 or any other provision of Oregon law, the provisions of this section shall control.

(d) ORS 527.674 does not apply to the rules required to be adopted pursuant to this section.


**Protection of Human Health and Safety**

**Section 14.** Sections 1 to 8 and 13 of this Act, and any rules or regulations adopted or enacted pursuant to any provision of sections 1 to 8 and 13 of this Act, are for the protection of public health and safety for the purposes of ORS 195.305(3)(b). The provisions of sections 1 to 8 and 13 of this Act, and any rules or regulations enacted pursuant to sections 1 to 8 and 13 of this Act, shall not be considered one or more land use regulations that restrict the residential use of private real property or a farming or forest practice.


**Scope of Act:  Forest Waters and Forestlands Protected**

**Section 15**. The provisions of this Act apply to all forestlands in Oregon including privately owned, state-owned and local government-owned forestlands, except as set forth in this Act. The provisions of this Act do not apply to federal or tribal forestlands exempt from regulation by this Act under federal law, or to Common School Forestlands.

**Section 16**. Nothing in this Act or this section 16 is intended to limit or otherwise restrict the State of Oregon's ability or authority to enforce  water quality standards established by the Environmental Quality Commission or under any other provision of law on federal forestlands, tribal forestlands or Common School Forestlands, or on watersheds that provide drinking water for municipal and other local water systems, including, but not limited to:

- the Bull Run Watershed, which provides drinking water for the Portland metropolitan area;

- the McKenzie River watershed, which provides drinking water for the Eugene metropolitan area;

- the Ashland Creek watershed, which provides drinking water for the city of Ashland;

9

Exhibit 3 - Page 9 of 13

- the Twin Mountain and Marble Point roadless areas, which provide drinking water for the city of Baker City;

- the Tumalo Creek Watershed, which provides drinking water for the Bend metropolitan area; and

- the North Santiam Watershed, which provides drinking water for Salem and surrounding communities.

**Audits and Review**

**Section 17.** (a) At least once each biennium, the Oregon Secretary of State, Division of Audits shall conduct financial and performance audits, delivered at a minimum to the Oregon Board of Forestry and the Environmental Quality Commission, and issued publicly on behalf of the residents of Oregon through news media and posted on state websites, regarding the effectiveness of this Act in protecting forest waters. The audit shall include:

(1) an analysis of the condition of forest waters based on the best available information, including trends in improvements or deterioration in the quantity and quality of forest waters. This analysis shall include consideration of the expected impacts on forest waters from climate change.

(2) an analysis of the collection of revenue allocated to the Department of Forestry pursuant to section 12 of this Act, and the outcomes of the distribution of that revenue.

(3) a survey of protections (through statute and rules) for any waters on forestland in Washington, California, and Idaho.

(4) a report on enforcement actions and rates of compliance with the provisions of this Act.

(5) a presentation of the best available information regarding reductions in water quality and quantity resulting from the cumulative impact of clearcut logging on forest waters and increases in fire severity and fire intensity in forestlands replanted following clearcut logging.

(6) recommendations for modifications and improvements of the provisions of this Act consistent with the policy and purposes of this Act, which may include the appropriation of additional funds if necessary for achieving the policies and purposes of this Act.

(b) The audits set forth in subsection (a) of this section shall be conducted pursuant to the provisions of Oregon Revised Statutes chapter 297 (and any subsequent modifications or amendments to those statutes), except to the extent any provision of chapter 297 conflicts with any provision of this Act, in which case the provisions of this Act shall control.

(c) The Audits Division shall monitor and report annually on agency progress in implementing recommendations made in the audits. The Audits Division shall follow up on recommendations as part of recurring audit work or as an activity separate from other audit activity. When

10

Exhibit 3 - Page 10 of 13

following up on recommendations, the Audits Division may request from the appropriate agency evidence of implementation.

(d) The first audits required by subsection (a) of this section shall be completed and published no later than December 31, 2022.

**DEFINTIONS**

**Section 18.** **Definitions.** (a) The words and phrases in this Act shall have the meaning provided in the Oregon Forest Practices Act, and in the version of OAR 629-600-0100 in effect as of January 1, 2020, unless specifically set forth and defined in subsection (b) of this section.

(b) As used in this Act:

(1) "Act" and "this Act" mean this 2020 initiative petition submitted to the electors of Oregon as a statewide ballot measure on the November 3, 2020 General Election ballot.

(2) "Actual conflict of interest" has the meaning provided in ORS 244.020(1).

(3) "Aerial application of pesticides" means the spraying or any other application of pesticide by aircraft.

(4) "Aerial pesticide applicator" means a person certified under ORS 634.128.

(5) "Clearcut logging" means any Harvest Type 1, Harvest Type 2 or Harvest Type 3 operation. This does not include firewood cutting or timber milling for personal use.

(6) "Common ownership" means direct ownership by one or more individuals or ownership by a corporation, partnership, association or other entity in which the one or more individuals, or an affiliated corporation, partnership, association, or other entity owns an interest.

(7) "Common School Forestlands" means forest parcels owned by the State Land Board granted to the state by the federal government when Oregon obtained statehood.

(8) "Emergency" means an actual or imminent threat of catastrophe, disaster or unforeseen condition or circumstance that causes or threatens to cause widespread loss of life, or injury to person or property.

(9) "Fishbearing stream" means any stream inhabited at any time of the year by anadromous or game fish species or fish that are identified on any lists that are adopted, by rule, by the State Fish and Wildlife Commission, or are federally listed under the Endangered Species Act of 1973, as amended, or which contains fish habitat that is currently accessible to such species. The existence of man-made barriers to fish passage shall not be a basis for classifying a stream as other than a fishbearing stream.

Exhibit 3 - Page 11 of 13

(10) "Forest operation" means any commercial activity relating to the growing or harvesting of any forest tree species as defined in ORS 527.620(6).

(11) "Forest waters" means any waters of the state on forestland.

(12) "Large stream" means a stream with an average annual flow of 10 cubic feet per second or greater.

(13) "Medium stream" means a stream with an average annual flow greater than 2 and less than 10 cubic feet per second.

(14) "Perennial streams" are flowing waters that do not go dry at any time during a year of normal rainfall and include any intermittently dry portions of the perennial channel below the uppermost point of perennial flow.

(15) "Pesticide" has the meaning provided in ORS 634.006(8).

(16) "Pesticide operator" has the meaning provided in ORS 634.006(13).

(17) "Public official" has the meaning provided in ORS 244.020(15).

(18) "Small tract forestland" means:

(A) forestland subject to assessment under ORS 321.700 to 321.754 and from which the harvesting of timber is subject to severance taxation under ORS 321.700 to 321.754;

(B) has an owner that owns or holds common ownership in at least 10 acres of Oregon forestland but less than 5,000 acres of Oregon forestland; and,

(C) constitutes all forestland within a single tax lot and all forestland within contiguous parcels owned or held in common ownership by the owner.

(19) "Stream" means a channel, such as a river or creek, which carries flowing surface water during some portion of the year.

(A) "Stream" includes:

(i) the water itself, including any vegetation, aquatic life, or habitats therein;

(ii) beds and banks below the high-water level which may contain water, whether or not water is actually present;

(iii) the area between the high-water level of connected side channels;

(iv) beaver ponds, oxbows, and side channels if they are connected by surface flow to the stream during a portion of the year;

(v) stream-associated wetlands; and,

12

Exhibit 3 - Page 12 of 13

(vi)  the channel migration zone, which is the area adjacent to an unconfined stream channel where channel location is reasonably expected to shift position on its floodplain through lateral avulsion or erosion during the period of time required to grow mature forest trees from the surrounding area (180-500 years, depending on site conditions), except as modified by a permanent levee or dike.

(B) "Stream" does not include:

(i)  ephemeral overland flow (such flow does not have a channel); or

(ii)  road drainage systems or water bodies developed for human purposes that are not part of a stream such as waste treatment lagoons, reservoirs for industrial use, drainage ditches, irrigation ditches, farm ponds, stock ponds, settling ponds, gravel ponds, cooling ponds, log ponds, pump chances, or heli-ponds that are maintained for the intended use by human activity.

(20)  "Written plan" has the meaning provided in ORS 527.620.



RECEIVED
9 Jul 2019     4:10 PM
Elections Division

Exhibit 3 - Page 13 of 13

Exhibit 4

Text of IP-36



RECEIVED
9 Jul 2019     4:10 PM
Elections Division

**Be it enacted by the People of the State of Oregon:**

<u>Section 1.</u> (a) Notwithstanding any other provision of Oregon law, clearcut logging and associated forest operations are prohibited:

(1) Within 100 feet of fishbearing streams, large and medium streams, significant wetlands, wetlands five acres or larger, and streams with domestic water use; and,

(2) Within 50 feet of all perennial streams, lakes, wetlands larger than one half an acre, and small non fishbearing streams subject to rapidly moving landslides as defined in ORS 195.250(3).

(b) The distances set forth in subsection (a) of this section shall be measured as horizontal distances from the forest waters and are intended to be implemented as exact minimum distances, not averages of variable distances over some unit of stream length within a harvest area.

(c) The minimum areas within which clearcut logging and associated forest operations are prohibited in subsection (a) of this section are subject to site-specific limited exceptions as specified in a written plan for operation approved by the State Forester for:

(1) maintenance of existing road crossings and unavoidable yarding corridors to the minimum size necessary provided an additional contiguous riparian area equal in size to that covered by the road crossing or yarding corridor remains unharvested and the impacted area is rehabilitated to the maximum extent practicable;

(2) thinning of small, under-canopy vegetation in a stand that best available information demonstrates is both necessary and effective to mitigate the risk of fire within the defensible space of dwellings, public buildings or critical built infrastructure, or to allow the safe use of prescribed fire as a forest restoration tool on dry forest types such as those in Southwest and Eastern Oregon.

(3) thinning of small, under-canopy vegetation in a stand that best available information demonstrates will enhance the resilience of the riparian area to drought, fire or to restore properly functioning riparian conditions provided that these operations shall first be reviewed and approved by a state-employed specialist in aquatic and riparian functions.

(d) The Department of Forestry may increase the size of areas specified in subsection (a) of this section, or specify additional restrictions on forest operations within these areas, to protect the quality or quantity of any or all forest waters as necessary to comply with state water quality standards, the protection goals of the Oregon Forest Practices Act, or to avoid impacts to threatened and endangered fish, species, wildlife, and habitats identified pursuant to ORS 527.710(3)(a), based on the best available information, significant new information, or changing climatic conditions.

<u>Section 2.</u> (a) The Board of Forestry shall adopt new rules for clearcut logging adjacent to forest waters on small tract forestlands that shall apply only to small tract forestland ownerships with 20 percent or more total acreage subject to no-harvest water protection restrictions under

Exhibit 4 - Page 1 of 5

section 1 of this Act. Upon final adoption of those rules, the prohibitions in Section 1 shall not apply to small tract forestland ownerships with 20 percent or more total acreage otherwise subject to no-harvest water protection restrictions under section 1 of this Act.

(b)  In developing rules under this section, the Board shall balance the regulatory impact of this Act while minimizing the threat of harm to forest waters.

**Section 3.**  ORS 526.009 is amended as follows:

(1)  There is created a State Board of Forestry consisting of seven members appointed by the Governor. The members appointed to the board shall be subject to confirmation by the Senate as provided in ORS 171.562 and 171.565. The Governor shall designate one member of the board as chairperson to hold that position until that member's term expires or until relieved by the Governor as provided in subsection (6) of this section. The chairperson shall have such powers and duties as are provided by the rules of the board.

(2)  The term of office of a member of the board is four years. A member shall be eligible for reappointment, but no member shall serve more than two consecutive full terms. In case of a vacancy for any cause, the Governor shall make an appointment as provided in subsection (1) of this section.

(3)  Appointments made by the Governor under subsection (1) of this section shall include appointment of at least one member from each of the forest regions established under ORS 527.640 and the rules adopted thereunder by January 1, 1987.

(4)  No more than three members of the board may derive any significant portion of their income directly from persons or organizations that are subject to regulation under ORS 527.610 to 527.770, 527.990(1) and 527.992.

**(a)  Any member of the board who derives any significant portion of their income directly from persons or organizations that are subject to regulation under ORS 527.610 to 527.770, 527.990(1) and/or 527.992 shall be considered to have an actual conflict of interest regarding any action, decision, or recommendation as a member of the board regarding forest waters or any provision of this Act.**

**(b)  Any member of the board with an actual conflict of interest as set forth in subsection (4)(a) of this section must announce publicly the nature of the conflict. After announcing the nature of the conflict, any such member may participate as a public official in any discussion or debate on the issue out of which the actual conflict arises but may not vote on the issue.**

(5)  Except as provided in subsection (4) of this section, no member of the board shall have any relationship or pecuniary interest that would interfere with the member representing the public interest.

(6)  The Governor may at any time remove any member of the board for inefficiency, incompetence, neglect of duty, malfeasance in office, unfitness to render effective service or failure to continue to meet the criteria of appointment pursuant to this section.

2

Exhibit 4 - Page 2 of 5

**Section 4.** (a) Any action, decision or recommendation by any person acting in a capacity as a public official regarding forest waters or any provision of this Act which would be to the private pecuniary benefit or detriment of the person or the person's relative or any business which the person or a relative of a person is associated, shall be considered an actual conflict of interest regardless of whether the private pecuniary benefit or detriment arises out of circumstances described in ORS 244.020(13)(a) or (c).

(b) Notwithstanding ORS 244.120(1)(c), any public official met with an actual conflict of interest as set forth in subsection (a) of this section must announce publicly the nature of the conflict. After announcing the nature of the conflict, any such public official may participate as a public official in any discussion or debate on the issue out of which the actual conflict arises but may not vote on the issue.

**Section 5. Emergency Exceptions.** The provisions of this Act and any rules promulgated pursuant to this Act may be suspended temporarily by the State Forester for an emergency that poses hazards to public health, safety or property, including but not limited to firefighting. Any suspensions may not exceed 60 calendar days unless renewed with a subsequent finding of necessity by the State Forester. For each suspension and renewal of suspension pursuant to this section, the State Forester shall provide an after-incident report to the Board of Forestry, posted on the Department's website, detailing the reasons for and effectiveness of the suspension and the effect of the suspension on the affected forest waters.

**Section 6. Protection of Human Health and Safety.** Sections 1 to 2 of this Act, and any rules or regulations adopted or enacted pursuant to any provision of sections 1 to 2 of this Act, are for the protection of public health and safety for the purposes of ORS 195.305(3)(b). The provisions of sections 1 to 2 of this Act, and any rules or regulations enacted pursuant to this sections 1 to 2 of this Act, shall not be considered one or more land use regulations that restrict the residential use of private real property or a farming or forest practice.

**Section 7. Forest Waters and Forestlands Protected.** The provisions of this Act apply to all forestlands in Oregon including privately owned, state-owned and local government-owned forestlands, except as set forth in this Act. The provisions of this Act do not apply to federal or tribal forestlands exempt from regulation by this Act under federal law, or to Common School Forestlands.

**Section 8. Definitions.** (a) The words and phrases in this Act shall have the meaning provided in the Oregon Forest Practices Act, and in the version of OAR 629-600-0100 in effect as of January 1, 2020, unless specifically set forth and defined in subsection (b) of this section.

(b) As used in this Act:

(1) "Act" and "this Act" mean this 2020 initiative petition submitted to the electors of Oregon as a statewide ballot measure on the November 3, 2020 General Election ballot.

(2) "Actual conflict of interest" has the meaning provided in ORS 244.020(1).

(3) "Clearcut logging" means any Harvest Type 1, Harvest Type 2, or Harvest Type 3 operation. This does not include firewood cutting or timber milling for personal use.

3

Exhibit 4 - Page 3 of 5

(4) "Common ownership" means direct ownership by one or more individuals or ownership by a corporation, partnership, association or other entity in which the one or more individuals, or an affiliated corporation, partnership, association, or other entity owns an interest.

(5) "Common School Forestlands" means forest parcels owned by the State Land Board granted to the state by the federal government when Oregon obtained statehood.

(6) "Emergency" means an actual or imminent threat of catastrophe, disaster, or unforeseen condition or circumstance that causes or threatens to cause widespread loss of life, or injury to person or property.

(7) "Fishbearing stream" means any stream inhabited at any time of the year by anadromous or game fish species or fish that are identified on any lists that are adopted, by rule, by the State Fish and Wildlife Commission or are federally listed under the Endangered Species Act of 1973, as amended, or which contains fish habitat that is currently accessible to such species. The existence of man-made barriers to fish passage shall not be a basis for classifying a stream as other than a fishbearing stream.

(8) "Forest operation" means any commercial activity relating to the growing or harvesting of any forest tree species as defined in ORS 527.620(6).

(9) "Forest waters" means any waters of the state on forestland.

(10) "Large stream" means a stream with an average annual flow of 10 cubic feet per second or greater.

(11) "Medium stream" means a stream with an average annual flow greater than 2 and less than 10 cubic feet per second.

(12) "Perennial streams" are flowing waters that do not go dry at any time during a year of normal rainfall and include any intermittently dry portions of the perennial channel below the uppermost point of perennial flow.

(13) "Public official" has the meaning provided in ORS 244.020(15).

(14) "Small tract forestland" means:

(A) forestland subject to assessment under ORS 321.700 to 321.754 and from which the harvesting of timber is subject to severance taxation under ORS 321.700 to 321.754;

(B) has an owner that owns or holds common ownership in at least 10 acres of Oregon forestland but less than 5,000 acres of Oregon forestland; and,

(C) constitutes all forestland within a single tax lot and all forestland within contiguous parcels owned or held in common ownership by the owner.

(15) "Stream" means a channel, such as a river or creek, which carries flowing surface water during some portion of the year.

4

Exhibit 4 - Page 4 of 5

(A) "Stream" includes:

(i) the water itself, including any vegetation, aquatic life, or habitats therein;

(ii) beds and banks below the high-water level which may contain water, whether or not water is actually present;

(iii) the area between the high-water level of connected side channels;

(iv) beaver ponds, oxbows, and side channels if they are connected by surface flow to the stream during a portion of the year;

(v) stream-associated wetlands; and,

(vi) the channel migration zone, which is the area adjacent to an unconfined stream channel where channel location is reasonably expected to shift position on its floodplain through lateral avulsion or erosion during the period of time required to grow mature forest trees from the surrounding area (180-500 years, depending on site conditions), except as modified by a permanent levee or dike.

(B) "Stream" does not include:

(i) ephemeral overland flow (such flow does not have a channel); or

(ii) road drainage systems or water bodies developed for human purposes that are not part of a stream such as waste treatment lagoons, reservoirs for industrial use, drainage ditches, irrigation ditches, farm ponds, stock ponds, settling ponds, gravel ponds, cooling ponds, log ponds, pump chances, or heli-ponds that are maintained for the intended use by human activity.

(16) "Written plan" has the meaning provided in ORS 527.620.



RECEIVED
9 Jul 2019    4:10 PM
Elections Division

Exhibit 4 - Page 5 of 5

Exhibit 5

Text of IP-37



RECEIVED
9 Jul 2019      4:10 PM
Elections Division

**Be it enacted by the People of the State of Oregon:**

**Section 1.** (a) Aerial application of pesticides within 500 feet of all forest waters is prohibited. The distances shall be measured as the horizontal distance from the forest waters and are intended to be implemented as exact minimum distances, not averages or variable distances over some unit of stream length.

(b) The prohibitions established in this section are in addition to, and not in lieu of, any other prohibitions on pesticide application established by law.

**Section 2.** (a) The Department of Forestry shall maintain an electronic reporting and notification system for pesticide operators, timber owners, or landowners proposing to conduct a forest operation involving an aerial application of pesticides to forestland outside the areas in which such application is prohibited pursuant to section 1 of this Act.

(b) A pesticide operator, timber owner, or landowner must file notice of a forest operation involving an aerial application of pesticides to forestland with the State Forester no later than 14 business days prior to the proposed date of the application and no earlier than 21 business days prior to the proposed date of the application. Such notice shall include, at a minimum:

(1) the name and business address of the pesticide operator, timber owner, landowner, and aerial pesticide applicator;

(2) the pesticide product common name or brand name and the name of any carrier substance to be used for the pesticide product and any registration number issued for the pesticide product by the United States Environmental Protection Agency, the Oregon Department of Agriculture, or any other federal or state administrative agency;

(3) the total amount and concentration of the pesticide and any substance used to enhance the effectiveness of the pesticide product expected to be used;

(4) the proposed date for the aerial application of pesticides; and,

(5) a legal description and map for the proposed area for the application.

(c) Upon receipt of a notice required by subsection (b) of this section, the Department shall send notice to any person who has requested notification of planned pesticide applications, submitted a valid e-mail address to the Department, and has provided a physical address that is within one mile of the proposed aerial application of pesticides.

(d) Not later than January 1, 2022, the Oregon Occupational Safety and Health division of the Department of Consumer and Business Services shall update and adopt rules to ensure and protect the health and safety of persons who perform or have contact with pesticides used in any forestland application. When enacting these rules, the Oregon Occupational Safety and Health division shall consult with the Oregon Health Authority and the Department of Environmental Quality.

1

Exhibit 5 - Page 1 of 4

**Section 3.** ORS 527.672 is amended as follows:

When a forest operation involves applying [*herbicides*] **pesticides** by aircraft near an inhabited dwelling or school, the operator [*is responsible for leaving an unsprayed strip of at least 60*] **shall not spray the area within 500** feet adjacent to the dwelling or school. The responsibility of the operator under this section is in addition to any responsibility of the aerial pesticide applicator under ORS chapter 634 **or any provision of this Act.**

**Section 4.** Sections 1 to 3 of this Act, and any rules or regulations adopted or enacted pursuant to any provision of sections 1 to 3 of this Act, are for the protection of public health and safety for the purposes of ORS 195.305(3)(b). The provisions of sections 1 to 3 of this Act, and any rules or regulations enacted pursuant to sections 1 to 3 of this Act, shall not be considered one or more land use regulations that restrict the residential use of private real property or a farming or forest practice.

**Section 5.** ORS 526.009 is amended as follows:

(1) There is created a State Board of Forestry consisting of seven members appointed by the Governor. The members appointed to the board shall be subject to confirmation by the Senate as provided in ORS 171.562 and 171.565. The Governor shall designate one member of the board as chairperson to hold that position until that member's term expires or until relieved by the Governor as provided in subsection (6) of this section. The chairperson shall have such powers and duties as are provided by the rules of the board.

(2) The term of office of a member of the board is four years. A member shall be eligible for reappointment, but no member shall serve more than two consecutive full terms. In case of a vacancy for any cause, the Governor shall make an appointment as provided in subsection (1) of this section.

(3) Appointments made by the Governor under subsection (1) of this section shall include appointment of at least one member from each of the forest regions established under ORS 527.640 and the rules adopted thereunder by January 1, 1987.

(4) No more than three members of the board may derive any significant portion of their income directly from persons or organizations that are subject to regulation under ORS 527.610 to 527.770, 527.990(1) and 527.992.

**(a) Any member of the board who derives any significant portion of their income directly from persons or organizations that are subject to regulation under ORS 527.610 to 527.770, 527.990(1) and/or 527.992 shall be considered to have an actual conflict of interest regarding any action, decision, or recommendation as a member of the board regarding forest waters or any provision of this Act.**

**(b) Any member of the board with an actual conflict of interest as set forth in subsection (4)(a) of this section must announce publicly the nature of the conflict. After announcing the nature of the conflict, any such member may participate as a public official in any discussion or debate on the issue out of which the actual conflict arises but may not vote on the issue.**

2

Exhibit 5 - Page 2 of 4

(5) Except as provided in subsection (4) of this section, no member of the board shall have any relationship or pecuniary interest that would interfere with the member representing the public interest.

(6) The Governor may at any time remove any member of the board for inefficiency, incompetence, neglect of duty, malfeasance in office, unfitness to render effective service or failure to continue to meet the criteria of appointment pursuant to this section.

**Section 6.** (a) Any action, decision or recommendation by any person acting in a capacity as a public official regarding forest waters or any provision of this Act which would be to the private pecuniary benefit or detriment of the person or the person's relative or any business which the person or a relative of a person is associated, shall be considered an actual conflict of interest regardless of whether the private pecuniary benefit or detriment arises out of circumstances described in ORS 244.020(13)(a) or (c).

(b) Notwithstanding ORS 244.120(1)(c), any public official met with an actual conflict of interest as set forth in subsection (a) of this section must announce publicly the nature of the conflict. After announcing the nature of the conflict, any such public official may participate as a public official in any discussion or debate on the issue out of which the actual conflict arises but may not vote on the issue.

**Section 7.** The provisions of this Act apply to all forestlands in Oregon including privately owned, state-owned and local government-owned forestlands, except as set forth in this Act. The provisions of this Act do not apply to federal or tribal forestlands exempt from regulation by this Act under federal law, or to Common School Forestlands.

**Section 8.** (a) The words and phrases in this Act shall have the meaning provided in the Oregon Forest Practices Act, and in the version of OAR 629-600-0100 in effect as of January 1, 2020, unless specifically set forth and defined in subsection (b) of this section.

(b) As used in this Act:

(1) "Act" and "this Act" mean this 2020 initiative petition submitted to the electors of Oregon as a statewide ballot measure on the November 3, 2020 General Election ballot.

(2) "Actual conflict of interest" has the meaning provided in ORS 244.020(1).

(3) "Aerial application of pesticides" means the spraying or any other application of pesticide by aircraft.

(4) "Aerial pesticide applicator" means a person certified under ORS 634.128.

(5) "Common School Forestlands" means forest parcels owned by the State Land Board granted to the state by the federal government when Oregon obtained statehood.

(6) "Forest operation" means any commercial activity relating to the growing or harvesting of any forest tree species as defined in ORS 527.620(6).

3

Exhibit 5 - Page 3 of 4

(7) "Forest waters" means any waters of the state on forestland.

(8) "Pesticide" has the meaning provided in ORS 634.006(8).

(9) "Pesticide operator" has the meaning provided in ORS 634.006(13).

(10) "Public official" has the meaning provided in ORS 244.020(15).

RECEIVED

9 Jul 2019    4:10 PM

Elections Division

Exhibit 5 - Page 4 of 4